24 October 2000

No. 2--99--1148

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

PEERLESS ENTERPRISE, INC.,          ) Appeal from the Circuit Court

                                   ) of Du Page County.

     Plaintiff-Appellee,           )

                                   )

v.                                 ) No. 93--L--1565     

                                   )          

RITA KRUSE, as Guardian 
ad litem
 for )

Peter A. Kruse; SHERRY BRUCATO;     ) 

and THRIFTY RENT-A-CAR SYSTEM, INC.,   )                  

                               )

Defendants     )                                        )

(Gallant Insurance Company, f/k/a   ) 

Allied American Insurance Company, )

Garnishee/Appellant;  American         ) Honorable

Ambassador Casualty Company,         ) Richard A. Lucas,

Garnishee).                            ) Judge, Presiding.

______________________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

The garnishee, Gallant Insurance Company, f/k/a Allied American Insurance Company (Gallant), appeals the trial court's award in favor of the plaintiff, Peerless Enterprises, Inc. (Peerless), in a garnishment action and the trial court's award of attorney fees and sanctions pursuant to section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 1998)).  We affirm.

On July 13, 1993, defendant Peter Kruse was involved in an automobile accident with Steven Peregoy in Wayne Township, Du Page County, Illinois.  Peregoy was driving an automobile owned by his employer, the plaintiff, Peerless.  Kruse was driving a vehicle that Thrifty Rent-A-Car Systems, Inc. (Thrifty), had rented to Sherry Brucato.  The accident caused damage to Peerless's car.  Peter 
Kruse was hospitalized and then placed in a nursing home; he has remained in a semicomatose state since the accident.

On August 9, 1993, Peerless filed a complaint against Peter Kruse, Brucato, and Thrifty, alleging that Peter Kruse's negligence caused the accident and damage to Peerless's automobile.  Thrifty and Brucato were subsequently dismissed from the suit.

On October 17, 1995, the trial court, Judge Robert Kilander presiding, entered judgment in favor of Peerless and against Peter Kruse in the amount of $30,604.34, plus costs.  On February 5, 1996, Rita Kruse, Peter's mother, was appointed guardian 
ad litem
 of Peter and was substituted as the defendant in the negligence action.

Peerless then filed a citation to discover assets and a motion for turnover of the assets of Peter Kruse.  Rita Kruse claimed that Peter Kruse was covered by policies issued by Gallant and American Ambassador Casualty Company (American).  Rita assigned to Peerless any rights Peter had in these policies.  Peerless then withdrew its motion for turnover of assets, and the trial court discharged Peerless's citation to discover assets against Rita Kruse.  On November 10, 1997, Peerless filed a nonwage garnishment action against Peter Kruse's alleged insurers, Gallant and American.  Both Gallant and American denied having property belonging to Peter Kruse and denied that they were indebted to Peter Kruse.  

Documents submitted by American in response to interrogatories indicated that, although Peter Kruse was covered by an American policy at the time of the accident, the policy did not include liability coverage.  Therefore, the trial court, Judge Rodney W. Equi presiding, granted American's motion to dismiss on September 29, 1998.  A document also indicated that on July 20, 1993, a request was made by Lincoln Towers Insurance Company (Lincoln Towers) to add basic liability coverage to Peter Kruse's American policy with a $1,000 medical payment limit.

On November 30, 1998, Gallant orally moved for substitution of  judge, and the judge denied this motion.  Before Gallant moved for substitution of judge, the trial court, Judge Richard Lucas presiding, made the following rulings: granting garnishee American’s motion for leave to allow the late filing of its reply to Peerless’s response to American’s motion to dismiss, granting Peerless’s motion for rule to show cause against Lincoln Towers for their failure to respond to a subpoena, and granting American’s motion to continue the hearing on its motion to dismiss; continuing the hearings on American’s motion to dismiss and Gallant’s rule to show cause; and continuing the garnishment trial based on the absence of a material witness.  

At the garnishment hearing, Rita Kruse, Peter Kruse’s mother and guardian 
ad litem
, testified that, at the end of June or the beginning of July 1993, her son, Peter, contacted his insurance agent, Danny Martin, to obtain automobile insurance.  After the accident, Rita found two insurance policies among Peter’s belongings that appeared to cover the date of the accident,  one from Gallant and the other from American.  Within a few days after the accident, Rita called Donny Martin and informed him about the details of the accident and her son's condition.  

Rita testified that her son had been in a semicomatose state in a nursing home since the July 13, 1993, accident.  On October 18, 1995, Peter’s attorneys, at Rita’s request, sent Gallant a letter notifying them that there were four lawsuits filed against Peter in connection with the July 1993 accident.  The letter requested that Gallant indemnify and defend Peter Kruse in these suits.  On October 9, 1997, Rita, as Peter Kruse's guardian, assigned Peter’s rights and claims under the Gallant insurance policy to Peerless.  

E. Paul Lanphier, an attorney representing Peerless, testified that on August 27, 1994, he sent a letter to Gallant informing it of the lawsuits pending against Peter Kruse at the time and requesting that Gallant provide a defense.  The letter also contained the insurance policy number.  Gallant responded in a September 2, 1994, letter asserting that the policy "was canceled on July 2, 1993," and had not been reinstated, and, therefore, there was no coverage on the date of the July 13, 1993, accident.

Jeffrey Spratt, manager with Gallant’s parent company, testified that he did not know if Gallant provided a defense for Peter Kruse or filed a declaratory action against Peter Kruse.  Spratt explained that Gallant received a request from Lincoln Towers to cancel Peter Kruse’s policy on July 22, 1993.  The request appeared to be prepared on July 20, 1993.  Lincoln Towers had the exclusive right to sell insurance for Gallant.  After receiving the request, a Gallant employee processed it and placed a July 22, 1993, date stamp on it.  Spratt characterized this request as coming from Peter Kruse and stated that this was the only request Gallant received for the cancellation of Peter Kruse’s policy.  The request form, which was admitted into evidence, contained the following hand-written comments:

"Please cancel policy immed.  Above has a currently susp. lic.  We have replaced coverage w/his phys. dam. carrier.  *** Dec. page will follow as soon as rec'd."

The request form included a section containing numerous phrases  accompanied by boxes to be checked.  The options included "Cancel Flat," "Cancel Prorate for," "Non-Payment," "Policy Attached," "Cancel Shortage," "Policy Attached," "Direct Note," and "Renewal."  The only box checked was the one next to the phrase "Cancel Prorate for."  The "Cancel Flat" box was not checked.

Spratt stated that, after receiving this request, Gallant "flat" canceled the policy; that is, Gallant canceled the policy from its inception date of July 2, 1993.  However, Spratt admitted that Gallant had not received a request from Peter Kruse or anyone else to flat cancel the policy.  Spratt explained that Gallant flat canceled policies when an insured had duplicate insurance with the same coverage.  Spratt stated that he believed that Peter Kruse had such duplicative insurance coverage with American.  However, after reviewing American’s declaration page, Spratt acknowledged that the coverage was not duplicative because Peter Kruse’s policy with American did not include liability coverage. 

Spratt stated that there was no indication that Gallant had sent notice to Peter Kruse or his agent of the cancellation. Gallant admitted into evidence a moving violation issued to Peter Kruse in 1990, indicating that he had been driving while his license was suspended.  Spratt stated that Gallant would not have issued an insurance policy to someone with a currently suspended driver’s license, but it would issue a policy to a driver whose license had been suspended and later reinstated.  Peter Kruse’s application did not indicate that his license had been suspended.   

Nancy Tidwell, a licensed broker and sales manager for 20 years for the parent company of Lincoln Towers, testified that on July 20, 1993, Lincoln Towers sent a request to American for additional coverage for Peter Kruse.  On the same day, Lincoln Towers also sent Gallant a request to cancel Peter Kruse’s policy.  The two requests were prepared with information received from Martin, Peter Kruse’s agent.

Tidwell stated that flat canceling a policy meant that the policy never existed.  Canceling a policy required the insurer to notify the customer to give the customer time to obtain other insurance.  Tidwell opined that the cancellation constituted a simple cancellation and not a flat cancellation.  Thus, Gallant was required to notify Peter Kruse of the cancellation.  Further, Gallant would have been required to notify Peter Kruse of the cancellation even if Kruse himself had requested the cancellation.  Tidwell also opined that Peter Kruse’s policy with Gallant was in effect from July 2, to July 20, 1993, and that the policy was in effect on the day of the July 13 accident.  The only liability coverage Peter Kruse had from July 2, 1993, to July 20, 1993, was with Gallant. 

Tidwell stated that, typically, a 25% down payment was collected by the agent from the insured at the time the insurance application was taken.  Gallant then billed the insured for the balance.  In this case, Lincoln Towers billed Peter Kruse's agent for the down payment, but Gallant never sent a bill to Peter for the balance.  Also, typically, Lincoln Towers received an effective-date-of-

cancellation form from Gallant indicating the reason for a cancellation.  However, in this case, Lincoln Towers did not receive this form or any other indication that Peter Kruse had been notified regarding the cancellation.  Finally, Tidwell did not know whether Peter Kruse’s license had been suspended, but she stated that if an insurance company discovered that an insured's driver's license had been suspended it notified the insured of its intention to cancel the policy and provided the insured time to secure other insurance. 

During the garnishment proceeding, Peerless acknowledged that the policy limit for property damage was $15,000.  However, Peerless alleged that Gallant acted in bad faith and was, thus, liable for the entire amount of the underlying negligence judgment, plus interest, and an additional $1,000 in medical costs incurred by Peter Kruse.  The trial court granted Peerless's motion to estop Gallant from asserting policy defenses. 

After hearing the testimony and considering the documents admitted into evidence, the trial court, Judge Lucas presiding, entered judgment against the garnishee, Gallant, in the amount of $31,604.34, plus interest.  The trial court then set a hearing date to determine the amount of attorney fees.  On February 18, 1999, Peerless filed a petition for attorney fees pursuant to section 155 of the Illinois Insurance Code.  215 ILCS 5/155 (West 1998).  Peerless also filed a supporting affidavit and time schedule stating that its counsel had incurred $20,846.25 in fees and $676.50 in costs.  On March 1, 1999, Peerless filed a motion to conform the pleadings to the proof.

In response, Gallant claimed that the plaintiff failed to state a cause of action for attorney fees under section 155 of the Code, an action for attorney fees under the Code cannot be brought as part of a garnishment action, and no evidence related to bad faith was heard.  On March 22, 1999, the trial court granted Peerless's motion for leave to conform its pleadings to the proofs.  After the trial court permitted Peerless to conform its pleadings to the proofs, Gallant orally moved to introduce additional evidence regarding the lack of bad faith.  Gallant also sought and was granted leave to conduct discovery for the hearing on attorney fees.  Prior to hearing evidence regarding attorney fees, the trial court struck parts I and II of Peerless's billing memorandum, leaving only part III of the billing memorandum alleging $9,056.25 in fees and $2,012.50 in additional fees. 

At the hearing, Jeffrey Kowalkowski, Peerless's attorney, testified regarding attorney fees.  Kowalkowski's affidavit, providing a breakdown of attorney fees, was admitted into evidence.  Kowalkowski also testified regarding additional fees incurred after the garnishment action.   

Gallant moved  to strike testimony regarding attorney fees, alleging that the trial court failed to make a finding of bad faith.  The trial court did not agree with this assertion but heard testimony from Gallant's Spratt regarding the issue of bad faith.  The trial court then took judicial notice of the testimony given in the garnishment trial.

At the attorney fee hearing, Spratt testified that Gallant did not provide Peter Kruse with notice regarding the cancellation of his policy.  However, the policy provided that the policy would be null and void if the insured provided false statements in the insurance application. 

At the close of the hearing, Peerless requested $11,000 in attorney fees and another $25,000 in compensation as provided for in section 155(b) of the Code.  215 ILCS 5/155(b) (West 1998).  On August 18, 1999, the trial court found that the Gallant insurance policy at issue was in full force and effect on the date of the accident and that Gallant had acted in bad faith by denying coverage.  The trial court awarded Peerless $16,127.  Gallant filed a timely notice of appeal.

Initially, we address Gallant's motion to strike Peerless's supplemental statement of facts.  Gallant alleges that Peerless's statement of facts is argumentative, misleading, and not necessary.  After reviewing the briefs and the record, we determine that Gallant's allegations are without merit.  Further, contrary to Gallant's argument, nothing in Supreme Court Rule 341(f) required Peerless to formally object to Gallant's statement of facts before submitting a supplement.  See 155 Ill. 2d R. 341(f).  Thus, we deny Gallant's motion to strike this portion of Peerless's brief.  Gallant also urges this court to strike other portions of Peerless's brief.  We deny this request for the reasons discussed below.

Gallant first argues on appeal that the trial court, Richard A. Lucas presiding, erred by denying its motion for a substitution of judge.  Peerless argues that Judge Lucas’s decision was proper because Gallant failed to provide proper notice of its motion.  We believe Judge Lucas did not abuse his discretion.

Section 2-1001(a)(2) of the Illinois Code of Civil Procedure provides for substitution as of right if the motion is made before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case.  735 ILCS 5/2-1001(a)(2) (West 1998). 

We note that Peerless filed and then withdrew a motion to strike this portion of Gallant's brief.  Further, Peerless failed to object to Gallant’s motion for substitution of judge below, and the record does not contain the reason for Judge Lucas's decision to deny Gallant’s motion.  However, we may affirm on any basis found in the record.  
Massie v. Minor
, 307 Ill. App. 3d 115, 121 (1999).

Section 2-1001(b) of the Illinois Code of Civil Procedure provides:

"An application for substitution of judge may be made to the court in which the case is pending, reasonable notice of the application having been given to the adverse party or his or her attorney."  735 ILCS 5/2-1001(b) (West 1998).

It is well established that a trial court may deny a motion for substitution of judge if reasonable notice has not been given to the adverse party.  
Koch v. Carmona
, 268 Ill. App. 3d 48, 57 (1994).  What constitutes reasonable notice depends on the facts and circumstances of each case.  
Koch
, 268 Ill. App. 3d 57-

58. Further, a reviewing court will not disturb a trial judge's determination as to the sufficiency  of notice, absent an abuse of discretion.  
Koch
, 268 Ill. App. 3d 57-58.

In the case at bar, Gallant provided virtually no notice to Peerless.  Gallant made its motion orally, and Peerless did not know about this motion until approximately 10 minutes before Gallant moved in open court.  In light of the other cases addressing this issue, we cannot say that this constituted reasonable notice or that the trial court abused its discretion by denying Gallant’s motion.  See 
Koch
, 268 Ill. App. 3d at 57-58 (holding notice unreasonable where it was served approximately 24 hours before the presentation of the motion); 
 
Buckingham Corp. v. Modern Liquors, Inc.
, 16 Ill. App. 3d 534, 537 (1973) (holding notice unreasonable where it was served approximately 18 hours before the presentation of the motion).

Next, Gallant argues that Peerless lacked standing to seek attorney fees and sanctions under section 155 of the Code because such fees cannot be awarded in a garnishment action and cannot be awarded to a judgment creditor who was not an insured.  We disagree.

Section 155 of the Illinois Insurance Code provides in pertinent part:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts: *** (b) $25,000[.]"  215 ILCS 5/155 (West 1998).  

Gallant's arguments regarding the application of section 155 in garnishment proceedings were made in another case and rejected by the First District in 
Buckner v. Causey
, 311 Ill. App. 3d 139 (1999).  
Buckner
 was filed by the Appellate Court, First District, on December 30, 1999, one week before Gallant's appellate brief was due in this case.  The facts in 
Buckner
 are surprisingly similar to the facts in the case at bar.  In 
Buckner
, the plaintiff obtained a judgment against Gallant's insured in a personal injury action.  The plaintiff/judgment creditor then filed a garnishment action against Gallant.  Like the case at bar, Gallant claimed that it had no funds belonging to its insured/judgment debtor and that it had a defense to the alleged liability under the insurance contract.  
Buckner
, 311 Ill. App. 3d at 141.  The trial court determined that Gallant was liable to its insured/judgment debtor under the insurance contract and awarded the insured/judgment debtor $16,771.91 for the use and benefit of the plaintiff/judgment creditor.  The insured/judgment debtor then sought attorney fees from Gallant under section 155 of the Code (215 ILCS 5/155 (West 1998)).  
Buckner
, 311 Ill. App. 3d at 141.  The trial court ordered Gallant to pay attorney fees and sanctions.  
Buckner
, 311 Ill. App. 3d at 141-42.  On appeal, Gallant argued that relief under section 155 could not be brought in the context of a garnishment proceeding brought by a third party.  
Buckner
, 311 Ill. App. 3d at 141-42.   The appellate court affirmed, holding that section 155 applied to garnishment actions "where the question of its [an insurance company's] liability on a policy of insurance is in issue."  
Buckner
, 311 Ill. App. 3d at 150.

Like the action in 
Buckner
, the question of Gallant's liability was an issue in the garnishment action in this case.  Further, the fact that Peerless (the judgment creditor), and not Peter Kruse (the insured/judgment debtor), sought 155 sanctions is of no consequence.  Peter Kruse, through his guardian, Rita Kruse, assigned his rights under the insurance contract to Peerless.  It is well settled that the rights and remedies available under section 155 can be extended to assignees of insureds.  
Garcia v. Lovellette
, 265 Ill. App. 3d 724, 728 (1994) ("[a] section 155 claim for an insurer's vexatious delay is intended for the protection of the insured party, or an assignee who succeeds the same position of the insured").  Gallant does not question the validity of the  assignment of Peter Kruse’s rights to Peerless.  Therefore, we adopt the reasoning of the Appellate Court,  First District, and determine that Peerless had standing in the garnishment action to seek attorney fees and sanctions under section 155.  

We note that, in its motion to strike, Gallant urged this court to strike Peerless's citation to 
Buckner
, Peerless's argument relying on 
Buckner
, and a copy of 
Buckner
 attached to Peerless's brief.  Gallant argues that 
Buckner
 is not precedential in this case because 
Buckner
 had not been published when Peerless filed its brief, it was issued by the Appellate Court, First District, and Gallant was granted an extension of time in which it could file a petition for leave to appeal to the supreme court.

We acknowledge that this court is not always bound by decisions of other appellate court districts.  
In re May 1991 Will County Grand Jury
, 152 Ill. 2d 381, 398 (1992).  However, as our supreme court stated, "there may be compelling reasons to do so when dealing with similar facts and circumstances."  Further, there is no doubt that the decisions of other districts have persuasive value.  
May 1991 Will County Grand Jury
, 152 Ill. 2d at 398.  In addition, in the absence of precedent in its own district, a circuit court is bound to follow the decisions of other appellate districts.  
Jachim v. Townsley
, 249 Ill. App. 3d 878, 882-83 (1993).  Therefore, 
Buckner
 is relevant to the issues raised on appeal, and we refuse to strike Peerless's citation of 
Buckner
 or its inclusion in Peerless's appendix.

Further, the fact that Gallant was granted an extension of time to file a petition for leave to appeal does not change the precedential effect of 
Buckner
.  See 
People v. Harris
, 123 Ill. 2d 113, 129 (1988) (the precedential effect of an appellate court opinion is not weakened by the fact that a petition for leave to appeal has been granted and is pending in that case).  Moreover, the fact that 
Buckner
 was not yet published when Peerless filed its brief is immaterial. There is no doubt that Gallant knew of the 
Buckner
 decision--it was a party in the case and Peerless sent Gallant's attorneys a copy of the slip opinion.  Further, Gallant's analogy of a slip opinion to a Rule 23 order is without support in the rule itself.  See 166 Ill. 2d R. 23(e).

We also reject Gallant's claim that Peerless's motion for attorney fees and sanctions under section 155 was untimely because the petition was filed after the trial court entered judgment on the garnishment claim.  It is well settled that a party may file a motion for section 155 sanctions after a garnishment judgment is entered as long as the court retains jurisdiction.  
Kinzer v. Fidelity & Deposit Co.
, 273 Ill. App. 3d 211, 225-26 (1995).  Here, the trial court expressly retained jurisdiction of the question of attorney fees and sanctions, and Peerless filed its petition within 30 days after the trial court entered judgment on the garnishment action (see 155 Ill. 2d R. 303(a)).  Thus, Gallant's argument fails.

Gallant also argues that Peerless failed to sufficiently plead  a claim for attorney fees and sanctions under section 155 of the Code.  We acknowledge that Peerless’s petition and amended petition for attorney fees and sanctions did not contain facts alleging vexatious and unreasonable conduct.  However, a trial memo filed by Peerless contained sufficient facts alleging Gallant’s vexatious and unreasonable conduct.  Gallant acknowledged that it received a copy of Peerless’s trial memo containing these allegations.  Further, Gallant was aware of Peerless’s allegations and arguments regarding Gallant’s conduct from the testimony and arguments Peerless presented at the garnishment trial.  Finally, Gallant had an opportunity to conduct additional discovery and present any additional evidence at the section 155 hearing and, in fact, Gallant provided additional testimony from Spratt, the manager of its parent company.  Thus, after reviewing the record, we determine that any alleged error in Peerless’s pleading did not prejudice Gallant and does not require reversal.  

Next, Gallant argues that the trial court's finding that it acted vexatiously and unreasonably was against the manifest weight of the evidence.  Peerless argues that the record supports the trial court's finding.  We agree with Peerless.

According to our supreme court, section 155 of the Code provides an extracontractual remedy to insurers and their assignees, whose insurer refuses to recognize liability and pay a claim under a valid insurance policy in a vexatious and unreasonable manner.  See 
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 520 (1996); 
Garcia
, 265 Ill. App. 3d at 728.  Section 155 of the Code is the legislature's remedy to an insured or his assignee "who encounters unnecessary difficulties when an insurer withholds policy benefits."  
Richardson v. Illinois Power Co.
, 217 Ill. App. 3d 708, 711 (1991); see also  
Kinzer
, 273 Ill. App. 3d at 226.  To determine whether the insured's conduct was vexatious and unreasonable, the court should consider "the insurer's attitude, whether the insured was forced to file suit to recover, and whether the insured was deprived of the use of its property."  
Mobil Oil Corp. v. Maryland Casualty Co.
, 288 Ill. App. 3d 743, 752 (1997).  A trial court must consider the insurer's conduct in the totality of the circumstances.  
Marcheschi v. Illinois Farmers Insurance Co.
, 298 Ill. App. 3d 306, 313 (1998).  We will not disturb a trial court's decision to award attorney fees and sanctions under section 155 unless it is an abuse of discretion.  
Employers Insurance v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 160 (1999).

In the case at bar, it was uncontroverted that Gallant issued Peter Kruse an insurance policy that became effective on July 2, 1993.  It was also undisputed that the accident in question occurred 11 days later, on July 13, 1993.  Further, Rita Kruse, through her attorney, notified Gallant of the accident and of four lawsuits filed against Peter in connection with the accident and requested indemnification and a defense.  In addition, Peerless’s attorney notified Gallant of the lawsuits pending against Peter Kruse, providing the policy number and dates of coverage and requesting a defense.  Gallant responded that the policy had been flat canceled and was not in effect at the time of the accident.  It is well settled that, when an underlying complaint presents an issue of potential insurance coverage and the insurer believes that the policy does not cover the claim, the insurer may not refuse to defend the insured, but must either defend the suit under a reservation of rights or seek a declaration of no coverage.  
Mobil Oil Corp
, 288 Ill. App. 3d 754.  It is uncontroverted that, in the case at bar, Gallant did neither of these things.

Further, nothing in the record supports Gallant’s claim that Peter Kruse requested a flat cancellation.  Ironically, Gallant relies on a document, a fax from Lincoln Towers to Gallant, that belies its argument.  The document requested cancellation of Peter Kruse’s policy, but it expressly requested "Pro-rata" payment.  The box next to "Flat Cancel" was conspicuously empty.  This indicated a request for a cancellation effective on the date it was requested, July 22, 1991, nine days after the accident occurred, and a request to bill Peter Kruse for part of the policy term.  Gallant had no reason to believe that Peter Kruse had requested a flat cancellation of his policy.  Even Tidwell, Lincoln Towers’ manager, opined that the request constituted a simple cancellation and not a flat cancellation.  Thus, there was ample evidence that Gallant’s refusal to provide coverage to Peter Kruse under its policy was vexatious and unreasonable.  Accordingly, we cannot say that the trial court’s decision to award attorney fees and sanctions under section 155 was an abuse of discretion.

Gallant argues that there was a 
bona fide
 dispute regarding coverage.  We recognize that, where there is a 
bona fide
 dispute as to whether an insurance policy was in effect at the time of the loss, an insurer's refusal to pay a claim is not vexatious and unreasonable under section 155.  
Ragan v. Columbia Mutual Insurance Co.
, 291 Ill. App. 3d 1088, 1099 (1997).  Gallant claims it believed that Peter Kruse canceled his policy because he had replaced Gallant’s coverage with that of another company.  For this reason, Gallant was not required to send Peter Kruse notice of cancellation.  Further, Gallant claims that it flat canceled Peter Kruse’s policy because it learned that Peter Kruse had a suspended driver’s license.  However, Gallant offered little, if any, evidence to support these claims.  

There is nothing in the record to support Gallant’s claim that  Peter Kruse replaced its policy with that of another company.  In fact, Spratt, the manager of Gallant’s parent company, admitted that the coverage in the American policy was not duplicative of Gallant’s because the American policy did not include liability coverage.  

There is also nothing in the record to support Gallant’s assertion that Peter Kruse canceled his policy with Gallant.  We fail to understand how Gallant could have believed that Peter Kruse canceled his policy on July 20, 1993, when it was uncontroverted that Peter Kruse was in a semicomatose state at that time and Gallant knew of his condition.

Gallant’s claim that it had grounds for flat canceling Peter Kruse’s policy because Peter's license had been suspended is also without merit.  Gallant fails to recognize that, when there is a question regarding the coverage of an insured’s claim, the insurer must either defend the insured under a reservation of rights or seek a declaratory judgment.  
Mobil Oil Corp
, 288 Ill. App. 3d 754.  When an insurer fails to act in either fashion and wrongfully denies coverage, the insurer is estopped from raising policy defenses to coverage.  
Mobil Oil Corp
, 288 Ill. App. 3d 754.  Thus, Gallant is estopped from raising this argument here as it was in the trial court.

Regardless of estoppel, Gallant presented no evidence indicating that Peter Kruse’s license was actually suspended in July 1993.  The traffic citation admitted into evidence established only that Peter's license had been suspended in 1990.  Further, Tidwell testified that, if Gallant discovered that Peter's licensed was currently suspended, it would be required to notify Peter of its intention to cancel and provide Peter with time to secure other insurance.  Gallant did neither; instead, it canceled the policy from the date of its inception.

After reviewing the record, we determine that it contains  ample evidence that Gallant’s refusal to provide coverage to Peter Kruse was unreasonable and vexatious.  Gallant had no reasonable excuse for its conduct.  Thus, the trial court did not abuse its discretion by awarding Peerless attorney fees and sanctions under section 155 of the Code.

Next, Gallant argues that the trial court erred in calculating attorney fees.  Gallant argues that the trial court ignored its own ruling that only fees related to the garnishment action would be recoverable.  According to Gallant, Peerless established that it incurred only $9,056.25 in fees in the garnishment action.  Peerless argues that the $16,127 award was for attorney fees and allowable sanctions pursuant to section 155 and was not an abuse of discretion.  We agree with Peerless.

Peerless presented evidence, through testimony and the affidavit of its attorney, that it incurred $11,000 in attorney fees in the garnishment action and in the proceedings that followed.  At the hearing, Peerless requested a total of $36,000, which included $11,000 in attorney fees and $25,000 in sanctions as provided in section 155.  215 ILCS 5/155(1)(b) (West 1998).  Gallant’s claim that the trial court’s award was for attorney fees only is not supported by the record.  Although the trial court did not expressly state that part of the award was for sanctions, in the absence of a contrary indication in the record, we must presume that the trial court's ruling conformed with the law.  See 
People v. McDuffee
, 299 Ill. App. 3d 283, 286 (1998).  Thus, we determine that the trial court did not abuse its discretion by awarding Peerless $16,127 in attorney fees and sanctions. 

Next, Gallant challenges the garnishment judgment, arguing that the trial court erred by entering judgment against it in the garnishment action, by  awarding Peerless an amount that exceeded the policy limits, and by awarding an additional $1,000 in medical expenses.  Peerless argues that these issues have been waived because Gallant failed to raise them in its notice of appeal.  In the alternative, Peerless argues that the trial court did not abuse its discretion. 

We note that, although Gallant failed to specify the garnishment judgment in its notice of appeal, the issues have not been waived.  It is well settled that an appellate court has jurisdiction only to review judgments or parts thereof that are specified in the appellant's notice of appeal.  See 155 Ill. 2d R. 303(b)(2); 
Habitat Co. v. McClure
, 301 Ill. App. 3d 425, 434 (1998).  However, an appellate court has jurisdiction to review an unspecified judgment if it was a " 'step in the procedural progression leading to the judgment specified in the notice of appeal.' "  
Habitat Co.
, 301 Ill. App. 3d at 434, quoting 
Burtell v. First Charter Service Corp.
, 76 Ill. 2d 427, 435 (1979).  We recognize that Gallant did not state in its notice of appeal that it was challenging the trial court's garnishment judgment.  However, the garnishment judgment was a necessary step in the procedural progression culminating in the granting of attorney fees and sanctions.  In the absence of the garnishment judgment, the trial court would have had no basis to award attorney fees and sanctions.  Thus, we will review the merits of Gallant's arguments challenging the trial court's garnishment judgment.  Incidentally, for the reasons stated above, we deny Peerless's motion to dismiss this portion of Gallant's appeal.

Gallant's argument regarding the trial court's finding of liability under its policy is without merit.  We have already determined that Gallant wrongfully denied coverage to Peter Kruse, there was no 
bona fide
 dispute regarding coverage, and Gallant presented no evidence to support its claim that the policy was flat canceled because Peter Kruse had a suspended driver's license.  Thus, the trial court's finding that Gallant was liable to Peter Kruse for damages incurred in connection with the July 13, 1993, accident was not against the manifest weight of the evidence.

We also determine that the amount awarded was proper.  It is well settled:

"When an insurance company unjustifiably refuses to defend its insured, the measure of damages is (1) the amount of the judgment against its insured up to the policy limits unless the insurer was guilty of negligence, fraud or bad faith in which case there is 
liability for the full judgment
; (2) expenses incurred by the insured in defending the suit; and (3) any additional damages traceable to its refusal to defend."  
(Emphasis added.)  
Chandler v. Doherty
, 299 Ill. App. 3d 797, 805 (1998). 

Here, there was ample evidence to support the trial court's finding that Gallant acted in bad faith by refusing to provide coverage to Peter Kruse.  Thus, this argument fails.

Regarding Gallant's contention that the trial court erred by awarding an additional $1,000 in medical expenses, Gallant ignores the fact that, in addition to the amount of the underlying judgment, a trial court may award any additional damages traceable to the insurer's refusal to defend.  See 
Chandler
, 299 Ill. App. 3d at 805.  It is undisputed that the policy at issue provided Peter Kruse with coverage for medical expenses up to $1,000.  Further, Gallant does not argue that these additional costs were not actually incurred or that Rita Kruse's assignment of Peter Kruse's rights to Peerless was improper.  Thus, we determine that the trial court did not err by awarding Peerless an additional $1,000 in medical costs.

Gallant cites 
Mohr v. Dix Mutual County Fire Insurance Co.
, 143 Ill. App. 3d 989 (1986), to support its argument that a trial court may not enter judgment against an insurer in excess of its policy limits.  However, the court in 
Mohr
 did not hold that recovery from an insurer is limited to the policy limit.  Rather, the court stated, as we do here, that a court may award damages greater than the policy limit in certain circumstances.  
Mohr
, 143 Ill. App. 3d at 997.  Thus, this case does not support Gallant's position.

Lastly, we address Peerless's request for attorney fees on appeal.  Peerless argues that it is entitled to attorney fees on appeal pursuant to Supreme Court Rule 375 and section 155 of the Code.  155 Ill. 2d R. 375; 215 ILCS 5/155 (West 1998).  Gallant argues that Peerless's request for attorney fees on appeal is frivolous and that it should be stricken.  We disagree with Gallant.

Under section 155 of the Code, attorney fees and sanctions for vexatious and unreasonable delay may include the delay incurred by an insurer's appeal of a judgment.  See 
Myrda v. Coronet Insurance Co.
, 221 Ill. App. 3d 482, 492-93 (1991).  As we previously stated, this court must "enforce the Code's protection of insureds by restraining insurers from using the appeal process to punish the insured by lessening recovery through ill-founded appeals."  
Myrda
, 221 Ill. App. 3d at 492-93.  
We agree with Peerless that Gallant's vexatious and unreasonable delay was further compounded by this appeal; Gallant's arguments on appeal lack support in fact and in law.  Thus, we determine that Peerless is entitled to attorney fees incurred on appeal.  Peerless attached the affidavit of its attorney stating the number of hours and fees accumulated on appeal.  Gallant has 14 days from the filing of this disposition in which to challenge this affidavit. 

We reject Gallant's argument that Peerless's request for attorney fees must be struck because it did not file a motion for fees but included its request in its appellee's brief instead.  Rule 375 provides that an appellate court may impose sanctions on its own initiative.  155 Ill. 2d R. 375(b).  Further, nothing in section 155 of the Code requires the insured to actually file a motion for attorney fees incurred on appeal.  

Lastly, Gallant requests that we award it attorney fees on appeal.  We deny this request.  We have already denied Gallant's motion to strike Peerless's brief and granted Peerless's request for attorney fees on appeal.  Further, Peerless withdrew its motion to dismiss Gallant's challenge to the trial court's denial of its motion for substitution of judge, and we determine that Peerless's motion to dismiss Gallant's challenge of the trial court's garnishment judgment does not warrant an award of attorney fees. 

Accordingly, we affirm the trial court's judgments, deny Peerless's motion to dismiss a portion of Gallant's appeal, deny Gallant's motion to strike portions of Peerless's appellee's brief, deny Gallant's motion for sanctions, and grant Peerless's motion for attorney fees on appeal.  Gallant has 14 days to respond to the affidavit submitted by Peerless's attorney regarding fees incurred on appeal.

For these reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and HUTCHINSON, JJ., concur.