MARLIN UNZICKER *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. KRAFT FOOD INGREDIENTS CORPORATION, Defendant and Third-Party Plaintiff-Appellee and Cross-Appellant (Nogle and Black Mechanical, Inc., Third-Party Defendant).

Fourth District   No. 4—00—0671

Argued April 24, 2001.—Opinion filed October 23, 2001.

Gerald P. Rodeen, of Dilks, Rodeen & Gibson, Ltd., of Paxton, and Reino C. Lanto, Jr. (argued), of Rantoul, for appellants.

Stephen L. Corn (argued) and John L. Barger, both of Craig & Craig, of Mattoon, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Marlin Unzicker, appeals a judgment finding defendant Kraft Food Ingredients Corporation (Kraft) only severally liable for the judgment in Unzicker's favor. The judgment was entered in accordance with the former version of section 2—1117 of the Civil Practice Law, which provided several liability for defendants whose fault was less than 25% of total fault, including the fault of "any third[-]party defendants who could have been sued by the plaintiff." 735 ILCS 5/2—1117 (West 1994). In September 1996, Judge Miller conducted the trial in the case and the jury had apportioned fault at 1% on the part of Kraft and 99% on the part of third-party defendant, Nogle & Black Mechanical, Inc., Unzicker's employer. In November 1996, Judge Miller entered judgment. We affirm for reasons different than those given by the trial court.

## I. BACKGROUND

Unzicker was injured July 20, 1991, while he was installing stainless steel piping in Kraft's Champaign, Illinois, plant. At the time of the accident, Unzicker and another Nogle & Black employee, Mike Mills, were standing on a "manlift" (scissors lift), welding flanges to a pipe. Mike Law, a Nogle & Black foreman, wanted to deliver some equipment to Unzicker. To do that, the Nogle & Black crew used a Kraft forklift, previously made available to Nogle & Black by Kraft. The forklift was operated by a Nogle & Black apprentice, with Law in the forklift's basket. Law was being elevated as the forklift approached the manlift. The forklift struck the manlift and the manlift tipped over, causing Unzicker and Mills to fall.

On October 7, 1992, Unzicker filed suit against Kraft, alleging negligence and violations of the Structural Work Act (740 ILCS 150/0.01 through 9 (West 1992) (repealed by Pub. Act 89—2, § 5, eff. February 14, 1995 (1995 Ill. Laws 7))). Kraft filed a third-party complaint against Nogle & Black on September 21, 1993.

The jury returned its verdict on September 18, 1996, finding against Unzicker on the Structural Work Act counts but finding in his favor on the negligence counts. The jury found Unzicker's total damages to be $879,400, with nonmedical damages of $788,000. The jury apportioned 1% of the fault to Kraft and 99% to Nogle & Black. If Kraft's liability were limited to 1% of the damages, the verdict was essentially a loss for Unzicker. As an employer, Nogle & Black was liable (for contribution) only to the extent of its workers' compensation liability. *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 165, 585 N.E.2d 1023, 1028 (1991).

On November 5, 1997, Unzicker filed a posttrial motion and his first notice of appeal in this case, appealing the judgment finding Kraft severally liable for only 1% of the verdict, rather than jointly liable for the full amount. Kraft moved to dismiss that appeal, arguing that the case was over, that the last pending posttrial motion was resolved on April 2, 1996, and any notice of appeal should have been filed by May 2, 1996. This court, in a Rule 23 order (166 Ill. 2d R. 23) dated October 30, 1998, disagreed with Kraft, noting that a claim for attorney fees was unresolved until October 6, 1997, when a final written order was entered. *Unzicker v. Kraft Food Ingredients Corp.*, No. 4—97—1019 (October 30, 1998) (unpublished order under Supreme Court Rule 23). Therefore, Unzicker's notice of appeal was timely, as was his November 5, 1997, motion for reconsideration filed in the trial court. However, this court determined that it could not proceed with the appeal, quoting Rule 303 (155 Ill. 2d R. 303(a)(2)) that " 'a notice of appeal filed before the entry of the order disposing of the last pending post[ ]judgment motion shall have no effect.' " (Emphasis omitted.) *Unzicker*, slip order at 11 (October 30, 1998). This court then dismissed the appeal, noting that "[t]he 30-day time limit for the filing of an appeal will not begin to run in this case until the trial court rules on the pending posttrial motion." *Unzicker*, slip order at 12 (October 30, 1998).

On March 31, 1999, the supreme court denied leave to appeal, stating:

"In the exercise of this Court's supervisory authority the Appellate Court, Fourth District, is directed to vacate that portion of its judgment in *Unzicker v. Kraft Food Ingredients Corp.*, case No. 4—97—1019, that remanded with instructions." *Unzicker v. Kraft Food*

*Ingredients Corp.*, 183 Ill. 2d 598, 707 N.E.2d 1235 (1999) (nonprecedential supervisory order).

On May 24, 1999, this court entered an amended order which simply dismissed the appeal. *Unzicker v. Kraft Food Ingredients Corp.*, No. 4—97—1019 (May 24, 1999) (unpublished order under Supreme Court Rule 23).

When the case returned to the trial court, Kraft argued that Unzicker's November 5, 1997, motion to reconsider could not be considered. Judge DeLaMar rejected that argument and ruled on the motion, denying it. The trial court found that Unzicker had waived any argument that section 2—1117 did not apply to the case, because Unzicker did not move to strike Kraft's answer. Kraft's answer was amended shortly before trial to raise as an affirmative defense the applicability of section 2—1117. Absent waiver, however, the trial court noted that it would be bound to follow *Lilly v. Marcal Rope & Rigging, Inc.*, 289 Ill. App. 3d 1105, 682 N.E.2d 481 (1997), which held that section 2—1117 could not be applied to limit recovery to a third-party defendant who is plaintiff's employer.

Unzicker now appeals, arguing the trial court erred in finding he had waived any objection to section 2—1117, improperly responded to questions by the jury, erroneously refused one of his instructions, and improperly limited his closing argument. Kraft cross-appeals, arguing the trial court had no jurisdiction to consider the motion to reconsider.

## II. ANALYSIS

### A. Kraft's Arguments Regarding Jurisdiction

■ Kraft argues in its cross-appeal that, after remand, the trial court was without jurisdiction to consider Unzicker's November 5, 1997, motion to reconsider. Kraft notes that our original order dismissed the appeal and remanded with directions to consider the motion, but the supreme court directed us to vacate that part of our order remanding with directions. Kraft views the supreme court order as a direction that no further proceedings take place on remand. We conclude, however, that the supreme court was merely pointing out that dismissal and remand with directions are mutually exclusive dispositions.

While the case was previously pending before us, Kraft, in the trial court, sought to dismiss Unzicker's motion to reconsider. Unzicker filed no response, and the trial court granted Kraft's motion. The trial court granted Kraft's motion because it concluded that it had no jurisdiction to consider the motion to reconsider, because the case was then on appeal. As noted, we concluded we had no jurisdiction on appeal because of matters then pending in the trial court, be-

ing Unzicker's motion to reconsider filed contemporaneously with the appeal. The trial court had no power to affect our jurisdiction by orders it entered after the notice of appeal was filed. *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 11, 749 N.E.2d 916, 923 (2001) ("orders entered after filing of a notice of appeal may be valid if they do not expand or modify the substantive issues before the reviewing court"). Kraft has not assisted in the orderly resolution of this dispute by its efforts to litigate the matter in both the trial court and the appellate court at the same time.

### B. Waiver of the Section 2—1117 Argument

■ We agree with Unzicker that the trial court erred in deciding that Unzicker had waived any argument regarding the application of section 2—1117 of the Civil Practice Law by failing to file a motion to strike Kraft's affirmative defense which raised that section. We disagree that section 2—1117 issues must be raised by affirmative defense. An affirmative defense is one that gives color to the claim of an opposing party and then asserts new matter by which the apparent right is defeated. *Zook v. Norfolk & Western Ry. Co.*, 268 Ill. App. 3d 157, 169, 642 N.E.2d 1348, 1357 (1994); see also *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 405, 706 N.E.2d 441, 454 (1998) (proper to raise compensation lien in a posttrial motion and to waive the lien after the jury verdict). That is not how section 2—1117 operates. Section 2—1117 operates as a matter of law to allocate damages according to the verdict of the jury. No facts or other affirmative matters are required to apply its provisions, so long as defendant has joined any necessary third-party defendants and the jury has determined the percentages of fault. Kraft was not required to raise section 2—1117 in an affirmative defense, and Unzicker cannot be faulted for failure to move to strike such an affirmative defense. Both parties were entitled to address the issue in motions filed after the verdict was entered.

### C. Application of Section 2—1117

■ As the trial court noted, it would have been required to apply the Fifth District's decision in *Lilly* to this case. We, however, are not so bound. *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 92, 679 N.E.2d 1224, 1229 (1997); *Peerless Enterprises, Inc. v. Kruse*, 317 Ill. App. 3d 133, 143, 738 N.E.2d 988, 998 (2000) (decisions of other districts have persuasive value, and there may be compelling reasons to follow them). We disagree with *Lilly*.

■ At the time of Unzicker's injury, section 2—1117 provided:

"Any defendant whose fault, as determined by the trier of fact, is

less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third[-]party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages [damages other than past and future medical and medically related damages]." 735 ILCS 5/2—1117 (West 1994). In *Lilly*, the Fifth District concluded that the words, "who could have been sued by the plaintiff" were words of precise meaning and that a plaintiff's employer is not a person "who could have been sued by the plaintiff." That overly technical interpretation is at odds with the clear legislative intent that a minimally culpable defendant is not to be required to pay an entire judgment and that responsibility for damages should be in proportion to fault. In section 2—1117, the legislature intended to list all those whose fault might play a role: the plaintiff, those sued, and those who could have been sued. Perhaps the legislature could have used the broader phrase "and those not sued," but that would have led to the ridiculous result described in *Lilly*, where plaintiff's pet iguana fit in the category of those "not sued." *Lilly*, 289 Ill. App. 3d at 1113, 682 N.E.2d at 486. Only those whose fault might have played a role are to be considered under section 2—1117, and their fault must in fact be determined by the jury. What sense would it make, in applying section 2—1117, to ignore the tortfeasor 99% at fault?

■ There is an exclusivity provision in the Workers' Compensation Act, that no common-law or statutory right to recover damages, other than workers' compensation, is available to an employee covered by the Workers' Compensation Act. 820 ILCS 305/5(a) (West 1996). Despite that provision, the supreme court has concluded that employers are subject to the Joint Tortfeasor Contribution Act (Contribution Act), which applies where "[two] or more persons are subject to liability in tort arising out of the same injury." 740 ILCS 100/2(a) (West 1996); *Doyle v. Rhodes*, 101 Ill. 2d 1, 461 N.E.2d 382 (1984). *Lilly* chooses to ignore *Doyle* on the basis that, if the legislature wanted to achieve the *Doyle* result, it would have used the identical language used in *Doyle* and the Contribution Act, "subject to liability in tort." *Lilly*, 289 Ill. App. 3d at 1108, 682 N.E.2d at 483. Again, we see no reason for such a restriction, particularly given the legislature's apparent purpose of including all those at fault in determining which defendants' fault might be less than 25% of the total fault. As *Doyle* explains, employers can be sued by their employees. The exclusivity provision of the Workers' Compensation Act is in the nature of an affirmative defense which is waived if it is not asserted. *Doyle*, 101 Ill. 2d at 10-11, 461 N.E.2d at 386-87. *Lilly*'s suggestion that *Doyle* involved the Contribution Act, which this case does not, is a distinc-

tion without a difference. See *Lilly*, 289 Ill. App. 3d at 1109-10, 682 N.E.2d at 483-84.

■ *Lilly* suggests that a statute that restricts plaintiff's common-law rights should be strictly construed. *Lilly*, 289 Ill. App. 3d at 1112, 682 N.E.2d at 485. The fact that a court has doubts whether damages from a injury can or should be divided among defendants is irrelevant. That question is one for the legislature, and we are bound to enforce the statute as it is written. The trial court correctly determined that Kraft, whose fault was found to be only 1% of the total of those potentially at fault (Unzicker, Nogle & Black, and Kraft), was only severally liable.

### D. Unzicker's Argument Regarding Jury Questions

■ We also reject Unzicker's argument that the trial court erred in failing to instruct the jury after the jury submitted questions. During deliberations, the jury sent three questions to the court. After discussing the matter with counsel, the court declined to answer the jury's questions, referring the jury instead to the instructions and the evidence. Unzicker claims the court improperly refused to answer those questions. Apparently the questions were:

"1. Plaintiff's [c]omplaint, what is the specific meaning of the word 'structure'—(a) scaffolding (scissors lift), (b) building, (c) pipe, (d) whole project?

2. Does operation of the forklift fall under the Structural Work Act as stated in Item B of [p]laintiff's [c]omplaint? Turning to [d]efendant's [i]nstruction [No.] 8, which gave the claims of the [p]laintiff in the [p]laintiff's [c]omplaint, Item B under the Structural Work Act count read, 'allowed a co-worker of the [p]laintiff to use one of Kraft's forklift trucks to raise another co-worker in a basket in connection with the use of the manlift.'

3. Is it a given that the Structural Work Act applies in this case, or is this something that we need to decide?"

Perhaps the third question could have been answered in the affirmative. The question whether a certain device is governed by the Structural Work Act is a matter of statutory construction and thus a question of law for the court. *Smith v. Excello Press, Inc.*, 169 Ill. App. 3d 1084, 1091, 523 N.E.2d 1231, 1235 (1988). However, the jury was told, in an instruction that corresponded to Illinois Pattern Jury Instructions, Civil, No. 180.04 (1995) (hereinafter IPI Civil (1995)), what the issues were. In this case, plaintiff claimed that defendant violated the Structural Work Act in a number of respects, and defendant denied that it violated the Structural Work Act. There was no issue as to whether the Structural Work Act applied. The court had to be careful not to tell the jury there was a violation of the Structural

Work Act—that was a question which the jury had to decide. The jury was given an instruction corresponding to IPI Civil (1995) No. 180.04, which said that plaintiffs claimed Kraft violated the Structural Work Act in a number of respects, including allowing "a co-worker of the plaintiff to use one of Kraft's forklift trucks," and allowing "the operation of the manlift used by plaintiff in a manner which was dangerous."

Jurors are entitled to have their questions answered, but the court may decline to answer a jury's question if the jury instructions are readily understandable and sufficiently explain the relevant law, further instructions would serve no useful purpose, further instructions would potentially mislead the jury, or the jury's inquiry involves a question of fact. *People v. Reid*, 136 Ill. 2d 27, 39-40, 554 N.E.2d 174, 179-80 (1990). Where answering the question would unduly single out a particular instruction already given, the court may decline to answer it. See IPI Civil (1995) No. 1.01 ("[y]ou must consider these instructions as a whole, not picking out one instruction and disregarding others").

The jurors' first question, as to the meaning of the word "structure," appears to relate to the instruction the jury was given that corresponds to IPI Civil (1995) No. 180.09. Under that instruction, one of the propositions which plaintiff had to prove was that "Defendant was the person having charge of the alteration, construction, or erection of the structure." The answer to the jurors' first question is clear from the instruction—the structure is the thing being altered, constructed, or erected. Was the jury asking whether it was sufficient that Kraft had charge of something less? In an instruction corresponding to IPI Civil 3d No. 180.02, the jury was told a person "who has charge of a particular phase of the work may also 'have charge of the work' if that phase of the work involves the violation from which the injury is alleged to arise." If the jury's question is ambiguous and any response to the question may require a colloquy between the court and the jury, a further explanation of the facts, and perhaps an expression of the trial court's opinion on the evidence, the court may refuse to answer the question. *Reid*, 136 Ill. 2d at 39-40, 554 N.E.2d at 179-80.

### E. Unzicker's Argument Regarding IPI Civil (1995) No. 180.19

■ Unzicker asked the trial court to give IPI Civil (1995) No. 180.19, "Conduct of Employer or Third Person Not a Defense." The second paragraph of that instruction states:

> "However, if you decide that the sole proximate cause of the injury to the plaintiff was something other than a violation of the Structural Work Act by the defendant, then your verdict should be for the defendant." IPI Civil (1995) No. 180.19

That language can be confusing when Structural Work Act counts are

pleaded in addition to negligence counts. If the jury concluded that Kraft's negligence was the "sole proximate cause" of the injury, should the verdict be for Kraft on the Structural Work Act counts? The trial court gave an instruction corresponding to IPI Civil (1995) No. 180.02, that *more than one person* may have charge of the work, and which person *or persons* had charge of the work under the particular facts of this case was for the jury to decide. The trial court concluded that was sufficient. We agree.

### F. Limitations on Unzicker's Rebuttal Argument

■ Unzicker further argues the trial court improperly sustained objections to one facet of his rebuttal argument, how fault should specifically be apportioned between Kraft and Nogle & Black. Neither Kraft nor Nogle & Black broached that particular subject in its arguments, however, and the issue was accordingly not the proper subject of a rebuttal argument. To the extent that Unzicker was attempting to respond to Kraft's plea for a verdict in its favor, any error would be harmless. The court's instructions and the arguments that Unzicker actually made adequately informed the jury that apportionment was an alternative. Indeed, that is precisely the route taken by the jury.

### III. CONCLUSION

We have considered all the arguments raised by the parties and we affirm the trial court's judgment accepting the jury's apportionment of fault and determining that Kraft was only severally liable.

Affirmed.

STEIGMANN, P.J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully disagree with the majority that section 2—1117 expresses a clear legislative intent. Section 2—1117 is ambiguous. Resort to legislative history does not answer the question of whether employers were intended to be included in the definition of those "who could have been sued by the plaintiff." The 1986 statute was intended to modify *Alvis v. Ribar*, 85 Ill. 2d 1, 421 N.E.2d 886 (1981), which abolished contributory negligence and substituted pure comparative negligence.

> "We've been told that the abuses in product liability have been such that have created such an unpredictable and large...and judgment...large situation. We have addressed that at the request of the business community so that the same comparative negligence restrictions and joint and several restrictions apply to product li-

ability also. And perhaps most of all, the worst case scenario that we've been presented with are the minimally culpable individual defendants who end up paying 100 percent of the award, primarily the local government, perhaps the retailer that are just there, and they have the deep pockets, and they end up paying. We have said anyone less than 25 percent is a minimally culpable defendant and they should not be required to pay all. So, as to non-economic damages or as to all damages other than medical, they're only severally liable. We've addressed that abuse. With the exception of medical costs, we do not believe that a medically indigent individual should end up paying all or any of this medical cost rendered...by an injury rendered by any defendant. We've made a restriction in there that provides for that medically indigent plaintiff to get relief. In the 'Alvis versus Rebard' [*sic*] case in a dissent by Justice Ryan, he points out why the Legislature is in a much better position to address the complexities of something such as this. In discussing the change from contributory negligence to comparative negligence, he indicates that it is the paramount role of the Legislature as a coordinate branch of our government, to meet the needs and demands of changing times and legislate accordingly. I believe that the problem with the courts creating laws is that they're presented with a factual situation under which they cannot change, and that the law is applied to this particular, perhaps polarized, factual situation and it sets the trend and sets the precedent for any other case that comes before this...or that particular court. What we have done is, we have singled out the abuses of the tort system and addressed them, single issue by issue, and provided for equitable, just relief. We have not made everyone happy. We may not have made everyone happy with the manner in which we've come to what we consider an equitable solution, but it is a solution, and it is an equitable one, and I would heartily recommend that we adopt the Conference Report on Senate Bill 1200." 84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 19-20 (statements of Representative O'Connell).

I can find no discussion in the legislative history, however, of third-party employer's liability in tort in the context of this case.

Clearly, however, the 1996 amendments to section 2—1117 were meant to codify *Kotecki*, 146 Ill. 2d 155, 585 N.E.2d 1023, which held that an employer sued as a third-party defendant in tort is liable in contribution for no amount in excess of his statutory workers' compensation liability:

"These modifications are entirely fair and equitable and consistent with Illinois law concerning an employer's responsibility to an employee and joint defendant's. This Bill merely codifies the deci-

sion of Kotechi [*sic*] versus Cyclops Welding Corporation (585 N.E.2d 123 (Ill. 1991)). In that case, Mr. Kotechi [*sic*] brought an action for personal injuries against the defendant-manufacturer of a welding agitator used on the premises of his employer. The manufacturer then filed a third[-]party complaint against Mr. Kotechi's [*sic*] employer seeking contribution. Mr. Kotechi [*sic*] moved to strike the third[-]party complaint and the court denied the [m]otion. On appeal, the Appellate Court reviewed whether an employer sued as a third[-]party defendant, in a product liability case, is liable for contribution for any amount in excess of the employer's statutory obligation or liability under Workman's Compensation laws. The court determined that the employer is not liable for any amount above the statutory Workman's Compensation Act recoveries. This Bill codifies current case law into the context of Workers' Compensation Laws." 89th Ill. Gen. Assem., House Proceedings, February 16, 1995, at 129-30 (statements of Representative Cross). This is the first discussion of an employer third-party defendant found in the legislative history of section 2—1117. This discussion appears to recognize the need for legislation that allows the third-party defendant employer to be sued. The definition of "tortfeasor" in the amendment clearly recognizes that liability:

" 'Tortfeasor' means any person, excluding the injured person, whose fault is a proximate cause of the death, bodily injury to person, or physical damage to property for which recovery is sought, regardless of whether that person is the plaintiff's employer, regardless of whether that person is joined as a party to the action, and regardless of whether that person may have settled with the plaintiff." 735 ILCS 5/2—1116(b) (West 1998).

However, the majority correctly notes that our supreme court in *Kotecki* and *Doyle v. Rhodes*, 101 Ill. 2d 1, 461 N.E.2d 382 (1984), has concluded employers are subject to the Contribution Act. I, though, agree with the dissent in *Ribar*:

"MR. JUSTICE UNDERWOOD, dissenting:

While I acknowledge the court's power to radically change a rule of law which has existed in this State for nearly a century, I still believe, as I did when *Maki v. Frelk* (1968), 40 Ill. 2d 193, was decided, that the decision to change is best left to the General Assembly." *Ribar*, 85 Ill. 2d at 29, 421 N.E.2d at 898.

Nonetheless, I also agree that the pertinent supreme court authority controls this issue.

I do, however, believe the trial court erred in failing to instruct the jury after the jury submitted questions. All questions should have been answered. The trial court should also have given IPI Civil (1995) No. 180.19. For these reasons, I would reverse the trial court.