Docket No. 92838–Agenda 14–May 2002.

MARLIN UNZICKER 
et al
., Appellants, v. KRAFT FOOD INGREDIENTS CORPORATION, Appellee.

Opinion filed November 21, 2002.

JUSTICE THOMAS delivered the opinion of the court:

At issue in this appeal are several questions regarding both the interpretation and constitutionality of section 2–1117 of the Code of Civil Procedure (735 ILCS 5/2–1117 (West 1994)), which modified the common law rule of joint and several liability. Pursuant to section 2–1117, any tortfeasor whose percentage of fault for a plaintiff’s injuries is found to be “less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff” is only severally liable for the plaintiff’s nonmedical damages. 735 ILCS 5/2–1117 (West 1994). In this case, plaintiffs, Marlin and Theresa Unzicker, argue that the trial court erred in applying section 2–1117, which resulted in a judgment that defendant Kraft Food Ingredients Corporation (Kraft) was liable for only 1% of Marlin’s nonmedical damages. Plaintiffs assert that Marlin’s employer, third-party defendant Nogle & Black Mechanical, Inc. (Nogle), whom a jury found to be 99% responsible for Marlin’s injuries, should not have been included in the division of fault. Plaintiffs contend that an employer who is protected from suit by the Workers’ Compensation Act (820 ILCS 305/1 
et seq
. (West 2000)) is not a party who “could have been sued” by the plaintiff. Additionally, plaintiffs contend that section 2–1117 is unconstitutional and that the trial court erred in failing to answer the jurors’ questions and to give a certain jury instruction.

BACKGROUND

The essential facts are undisputed. Marlin was injured on July 20, 1991, while he was installing stainless steel piping at Kraft’s plant in Champaign. Marlin and another Nogle employee, Mike Mills, were standing on a “manlift” and welding flanges to a pipe. Marlin’s foreman, Mike Law, attempted to deliver some equipment to him by bringing it in the basket of a forklift that was owned by Kraft and operated by another Nogle employee. The forklift collided with the manlift, causing Marlin and Mills to fall.

Marlin applied for and received workers’ compensation benefits. Additionally, Marlin and his wife, Theresa, sued Kraft, alleging negligence and violations of the Structural Work Act (740 ILCS 150/0.01 through 9 (West 1992), repealed by Pub. Act 89–2, §5, eff. February 14, 1995). Kraft filed a third-party complaint for contribution against Nogle.

The jury found against plaintiffs on the Structural Work Act claim, but in their favor on the negligence counts. The jury awarded plaintiffs $879,400 in total damages, $788,000 of which were nonmedical and $91,400 of which were medical. The jury apportioned 1% of the fault to Kraft and 99% to Nogle.

The trial court applied section 2–1117, which modified the common law rule of joint and several liability. At common law, a plaintiff could recover compensation for the full amount of his injury from any defendant responsible for the injury. 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 423 (1997). Section 2–1117 modified this rule as follows:

“Except as provided in Section 2–1118, in actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff’s past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages.” 735 ILCS 5/2–1117 (West 1994).
(footnote: 1)
The trial court’s application of this section and the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 
et seq
. (West 2000)) rendered the verdict somewhat of a loss for plaintiffs because Kraft was severally liable for only 1% of the nonmedical damages, and Nogle was liable only for contribution in an amount equal to its workers’ compensation liability (
Kotecki v. Cyclops Welding Corp.
, 146 Ill. 2d 155, 164-65 (1991)). Thus, the trial court entered judgment on the jury’s verdict as follows. Kraft and Nogle were jointly and severally liable for Marlin’s past and future medical expenses of $91,400. Kraft was severally liable for 1% of the nonmedical damages ($7,880). On Kraft’s third-party complaint, Nogle was liable to Kraft for $90,486 in contribution, which represented 99% of the medical damages.

Plaintiffs filed a post-trial motion in which they argued that the trial court erred in applying section 2–1117. Plaintiffs’ argument was based on the Fifth District of the Appellate Court’s opinion in 
Lilly v. Marcal Rope & Rigging, Inc.
, 289 Ill. App. 3d 1105 (1997), in which the court held that a plaintiff’s employer should not be included in an allocation of fault under section 2–1117 because an employer, who is immune from suit under the Worker’s Compensation Act, is not a “third party defendant who could have been sued by the plaintiff.”

The trial court denied the post-trial motion and found that plaintiffs had waived their argument that section 2–1117 should not apply. Kraft had initially raised the application of section 2–1117 as an affirmative defense in an amendment to its answer to the complaint. The trial court ruled that plaintiffs had waived their argument about section 2–1117 by failing to move to strike the answer. The trial court noted, however, that it would have been bound to follow 
Lilly
 if the issue had not been waived.

Plaintiffs appealed, and the Fourth District affirmed. 325 Ill. App. 3d 587. The Fourth District disagreed with the trial court’s conclusion that the section 2–1117 issue had been waived and held that section 2–1117 does not have to be raised as an affirmative defense. Rather, because that section operates to allocate damages according to the jury’s verdict, issues relating to it can be raised in motions filed after the verdict’s entry. 325 Ill. App. 3d at 592. On the underlying issue, however, the Fourth District disagreed with 
Lilly
 and held that an employer can be included within the phrase “any third party defendant who could have been sued by the plaintiff.” The court relied on 
Doyle v. Rhodes
, 101 Ill. 2d 1 (1984), in which this court held that employers are subject to the Contribution Act, which applies where “[two] or more persons are subject to liability in tort arising out of the same injury.” See 740 ILCS 100/2(a) (West 2000). In 
Doyle
, this court explained that the exclusive remedy provision of the Workers’ Compensation Act (820 ILCS 305/5(a) (West 2000)) is in the nature of an affirmative defense that is waived if not asserted. Until the defense is asserted, the employer is subject to liability in tort. 
Doyle
, 101 Ill. 2d at 10-11. Therefore, the Fourth District concluded, if the phrase “subject to liability in tort” in the Contribution Act can include a plaintiff’s employer, the phrase “any third party defendant who could have been sued by the plaintiff” in section 2–1117 can also include a plaintiff’s employer. 325 Ill. App. 3d at 593. We granted plaintiffs’ petition for leave to appeal to resolve this conflict in the appellate court.

ANALYSIS

I. Motions to Strike

Before discussing the merits of the appeal, we address two motions that we ordered taken with the case. Kraft moved to strike part of plaintiffs’ petition for leave to appeal and part of their opening brief. Kraft objected to plaintiffs’ raising issues that they did not raise in the appellate court. In the appellate court, plaintiffs raised only whether employers can be included in a section 2–1117 division of fault and whether the trial court erred in refusing to answer the jury’s questions. In 
Garza v. Navistar International Transportation Corp.
, 172 Ill. 2d 373, 383 (1996), we held that issues that the appellant fails to raise in the appellate court are waived for purposes of our review. See also 
Hammond v. North American Asbestos Corp.
, 97 Ill. 2d 195, 209-10 (1983).

Here, however, we choose not to apply waiver. Waiver is a limitation on the parties and not on the court. 
Committee for Educational Rights v. Edgar
, 174 Ill. 2d 1, 11 (1996). Moreover, we may consider an issue not raised below if the issue is one of law and is fully briefed and argued by the parties. 
Committee for Educational Rights
, 174 Ill. 2d at 11. The issues plaintiffs raise regarding section 2–1117 are purely legal questions that have been fully briefed. We believe that the public interest favors considering the issues now, and thus we will not apply waiver. See 
Committee for Educational Rights
, 174 Ill. 2d at 12. Accordingly, the motions to strike portions of the petition for leave to appeal and the plaintiffs’ brief are denied.

II. Interpretation of Section 2–1117

Our first inquiry is one of statutory construction. Plaintiffs argue that the appellate court erred in holding that a plaintiff’s employer can be considered a “third party defendant who could have been sued by the plaintiff” in determining percentages of fault under section 2–1117.

The cardinal rule of statutory construction is to ascertain and give effect to the legislature’s true intent. 
In re D.D.
, 196 Ill. 2d 405, 418 (2001). When determining legislative intent, our starting point is the statute’s language, which is the most reliable indicator of the legislature’s objectives in enacting the particular law. 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 504 (2000). When a statute’s language is clear and unambiguous, courts may not read in exceptions, limitations, or other conditions. 
D.D.
, 196 Ill. 2d at 419.  Only when the meaning of the provision cannot be ascertained from its language may a court look beyond the language and resort to aids for construction. 
Kunkel v. Walton
, 179 Ill. 2d 519, 533-34 (1997). Because statutory interpretation presents a question of law, our review is 
de novo
. 
King v. Industrial Comm’n
, 189 Ill. 2d 167, 171 (2000).

Whether a plaintiff’s employer can be considered in a section 2–1117 division of fault was first considered in 
Lilly
. In that case, the plaintiff obtained a judgment of $1,200,005 against the defendant. The jury apportioned 90% of the fault to the plaintiff’s employer, who was a third-party defendant, and 10% to the defendant. Accordingly, the defendant argued that it should be responsible for only 10% of the plaintiff’s nonmedical damages. The trial court disagreed and refused to reduce the judgment against the defendant. The Appellate Court, Fifth District, affirmed. 
Lilly
, 298 Ill. App. 3d 1105.

The Fifth District noted that section 5(a) of the Workers’ Compensation Act provides that “ ‘[n]o common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee *** other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act.’ ” (Emphasis omitted.) 
Lilly
, 289 Ill. App. 3d at 1107, quoting 820 ILCS 305/5(a) (West 1996). Thus, according to the Fifth District, a plaintiff’s employer is not a party who “could have been sued” by the plaintiff. The defendant in 
Lilly
 argued that 
Doyle 
mandated the opposite result. In 
Doyle
, this court considered whether employers were liable for contribution under the Contribution Act. The relevant portion of the Contribution Act provided that “where 2 or more persons are subject to liability in tort arising out of the same injury *** there is a right of contribution among them.” Ill. Rev. Stat. 1981, ch. 70, par. 302(a), now 740 ILCS 100/2(a) (West 2000). The issue in 
Doyle
 was whether employers, who are immune from suit under the Workers’ Compensation Act, are liable for contribution given that the Contribution Act applies only to those who are “subject to liability in tort.” This court held that the Contribution Act does apply to employers, reasoning as follows:

“The language relied on by the employer is neither unambiguous nor should it be construed in the way the employer seeks to apply it. The Workers’ Compensation Act provides employers with a defense against any action that may be asserted against them in tort, but that defense is an affirmative one whose elements–the employment relationship and the nexus between the employment and the injury–must be established by the employer, and which is waived if not asserted by him in the trial court. [Citations.] Thus, the plaintiff may recover a tort judgment against his employer for a work-related injury if the employer fails to raise the defense the Workers’ Compensation Act gives him [citation], and on occasion the employer may choose not to raise it in the hope that the plaintiff will be unable to prove negligence to a jury’s satisfaction. The potential for tort liability exists until the defense is established. As this court has recently decided in interpreting the phrase of the Contribution Act at issue here, ‘ “liability” is determined at the time of the injury out of which the right to contribution arises, and not at the time the action for contribution is brought’ [citations]. At the time of an injury for which an employer’s negligence is partly responsible, the employer is in fact ‘subject to liability in tort’ to his employee, although that liability can be defeated depending on the response he chooses to make to his employee’s claim in the event the employee decides to sue in tort.” 
Doyle
, 101 Ill. 2d at 10-11.

Lilly
 distinguished 
Doyle
 by noting that in 
Doyle
 this court was considering only whether employers were liable for contribution. 
Lilly
, 289 Ill. App. 3d at 1109. The court also noted that the legislature was aware of this court’s decision in 
Doyle
 when it enacted section 2–1117. Thus, according to 
Lilly
, if the legislature had intended for employers to be covered by section 2–1117, it would have used the phrase “subject to liability in tort” because that phrase had already been construed to include employers. 
Lilly
, 289 Ill. App. 3d at 1108. Further, 
Lilly
 held that by using the phrase “could have been sued,” the legislature did not mean to include merely theoretical actions. According to 
Lilly
, such a construction could include a plaintiff’s wife, his state, his god, or his pet iguana, because a plaintiff could theoretically file a piece of paper naming such persons, animals, or entities as defendants. 
Lilly
 concluded that the legislature did not intend “such a ridiculous result.” 
Lilly
, 289 Ill. App. 3d at 1113.

In the present case, the Fourth District rejected the Fifth District’s interpretation. The Fourth District relied on 
Doyle
, finding that the reasoning this court employed in determining that employers are “subject to liability in tort” would apply equally to a statute referring to “any third-party defendant who could have been sued by the plaintiff.” Further, the Fourth District concluded that the clear legislative intent in section 2–1117 was that minimally responsible defendants should not be responsible for entire judgments and that it would make no sense in allocating fault to ignore the tortfeasor 99% at fault. 325 Ill. App. 3d at 593.

We agree with the Fourth District’s interpretation. When the legislature enacted section 2–1117, it was aware of our construction of the phrase “subject to liability in tort” in the Contribution Act. We held that employers, despite their immunity provided by the Workers’ Compensation Act, are still subject to liability in tort because the protection of the Workers’ Compensation Act is in the nature of an affirmative defense that must be raised in the trial court if the plaintiff brings a suit. 
Doyle
, 101 Ill. 2d at 10; see also 
Braye v. Archer-Daniels-Midland Co.
, 175 Ill. 2d 201, 207-08 (1997) (section 5(a) of the Workers’ Compensation Act is in the nature of an affirmative defense that may be waived by the employer); 
Geise v. Phoenix Co. of Chicago, Inc.
, 159 Ill. 2d 507, 514 (1994) (same). In section 2–1117, the legislature referred to a division of fault among the plaintiff, the defendants sued by the plaintiff, and any third-party defendants who could have been sued by the plaintiff. Under our analyses in 
Doyle
, 
Braye
, and 
Geise
, a plaintiff’s employer who is a third-party defendant is a party who “could have been sued by the plaintiff.”

In coming to this conclusion, we must reject 
Lilly
’s somewhat fanciful hypothesis of legislative intent. According to 
Lilly
, if the legislature had intended to include employers in the division of fault, it would have used the phrase “subject to liability in tort” because this court had already construed that phrase as including employers. Thus, according to 
Lilly
, the legislature must have meant something different by using the phrase “could have been sued by the plaintiff.” If, however, the legislature intended to use language that would exclude employers, we believe that it would have simply put in language specifically excluding employers. If, as 
Lilly
 contends, the legislature was considering 
Doyle
 when it drafted section 2–1117 and wanted that section to mean something different, it is difficult to believe that the legislature would have chosen a phrase such as “who could have been sued by the plaintiff” instead of excluding employers explicitly.

Further, we disagree with 
Lilly
’s sarcastic conclusion that including an employer who has statutory immunity from tort suits in the division of fault would mean that a plaintiff’s pet iguana could also be included because a person could physically file a paper naming his pet as a defendant in a suit. Such an analysis ignores the first part of the relevant statutory phrase. Section 2–1117 does 
not
 include in the division of fault “anyone who could have been sued by the plaintiff.” Rather, it includes “any 
third-party defendant
 who could have been sued by the plaintiff.” In other words, the party must already have been brought into the case by a defendant for that party to be included in the division of fault. Unless defendants in tort suits begin filing contribution claims against the plaintiff’s pets, 
Lilly
’s fears of iguana litigation will never be realized.

The clear legislative intent behind section 2–1117 is that minimally responsible defendants should not have to pay entire damage awards. The legislature set the line of minimal responsibility at less than 25%. In order to apportion responsibility, the legislature looked to those people in the suit: the plaintiff, the defendants sued by the plaintiff, and any third-party defendants who could have been sued by the plaintiff. In our opinion, the broad wording in the statute merely shows that the legislature intended the division of responsibility to include those people in the suit who might have been responsible for the plaintiff’s injuries. Here, ignoring the party found to be 99% responsible for the plaintiff’s injuries and requiring the party found 1% responsible to pay all of the nonmedical damages would not be in accord with the clear legislative intent that minimally responsible defendants should not be liable for entire judgments. The appellate court did not err in holding that Nogle was properly considered in the division of fault.

III. Alleged Conflict with the Joint Tortfeasor Contribution Act

Plaintiffs next argue that section 2–1117 irreconcilably conflicts with sections 3 and 4 of the Contribution Act. These sections provide as follows:

“Amount of Contribution. The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability. However, no person shall be required to contribute to one seeking contribution an amount greater than his pro rata share unless the obligation of one or more of the joint tortfeasors is uncollectable. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability.

If equity requires, the collective liability of some as a group shall constitute a single share.” 740 ILCS 100/3 (West 2000).

“Rights of Plaintiff Unaffected. A plaintiff’s right to recover the full amount of his judgment from any one or more defendants subject to liability in tort for the same injury to person or property, or for wrongful death, is not affected by the provisions of this Act.” 740 ILCS 100/4 (West 1994).

According to plaintiffs, these two sections–section 4 explicitly and section 3 implicitly–recognize a plaintiff’s right to recover all of his or her damages from any responsible defendant. Section 2–1117, by contrast, eliminates a plaintiff’s ability to recover the full amount of his or her nonmedical damages from any defendant found to be less than 25% responsible for the plaintiff’s injuries.

Where there is an alleged conflict between two statutes, a court has a duty to interpret those statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible. 
McNamee v. Federated Equipment & Supply Co.
, 181 Ill. 2d 415, 427 (1998). Here, giving such an interpretation is not difficult because the statutes simply do not conflict. Section 4 of the Contribution Act merely clarifies that nothing in the 
Contribution Act
 affects a plaintiff’s right to recover the full amount of damages from any one or more defendants. Section 2–1117 is not in the Contribution Act, so its modification of joint and several liability does not conflict with Section 4. Section 3 explains how the amount of contribution is determined and what happens when one or more of the tortfeasors is insolvent. Likewise, this section simply does not conflict with section 2–1117’s modification of the rule of joint and several liability for minimally culpable defendants. Section 2–1117 comes into play before the Contribution Act and is applied to determine liability. Any defendant who pays damages in an amount greater than his or her proportionate share of fault can then seek contribution under the Contribution Act.

Plaintiffs rely on 
dicta
 from 
Best
, 179 Ill. 2d at 424-26, in which this court discussed a potential conflict between the amended version of section 2–1117 and section 4 of the Contribution Act. We noted that, as part of Public Act 89–7, the legislature simultaneously amended section 4 to provide that, with the exception of limited contribution against a plaintiff’s employer, nothing in the Contribution Act was intended to affect a plaintiff’s right to recover all of his or her damages from one or more responsible tortfeasors. As part of the same public act, the legislature passed amended section 2–1117 (735 ILCS 5/2–1117 (West 1996)), which abolished joint and several liability in favor of complete proportional several liability. Thus, the legislature passed legislation that abolished joint and several liability and at the same time recognized its continuing existence. 
Best
, 179 Ill. 2d at 425. Also, as part of Public Act 89–7, the legislature enacted section 3.5 of the Contribution Act, which codified the 
Kotecki
 decision and provided that an employer’s contribution liability would be capped at an amount equal to the employer’s workers’ compensation liability. See 
Best
, 179 Ill. 2d at 416. We recognized a potential conflict with the simultaneous enactment of this section and amended section 2–1117 because there would never be a reason to seek contribution if defendants were only severally liable for a plaintiff’s damages. 
Best
, 179 Ill. 2d at 416-18. Ultimately, however, this court never determined whether these conflicts could be resolved because we held that section 3.5 of the Contribution Act and amended section 2–1117 were both facially invalid–section 3.5 because of internal inconsistencies and amended section 2–1117 because it was passed in violation of the special legislation clause of the Illinois Constitution. 
Best
, 179 Ill. 2d at 416-33.

Defendant’s reliance on 
Best
 is misplaced. The potential conflicts we identified there are simply not present between original section 2–1117 and the Contribution Act. Section 2–1117 retains full joint and several liability for all past and future medical expenses. Further, the act retains full joint and several liability for those whose percentage of fault for the plaintiff’s injuries is 25% or greater. Joint and several liability is abrogated in favor of several liability only for those defendants whose percentage of fault is less than 25%. Thus, the Contribution Act and section 2–1117 are not in conflict. That those defendants whose percentage of fault is less than 25% will not need to avail themselves of the Contribution Act does not mean that the statutes conflict.

IV. Conflict with the Purpose of Joint and Several Liability

Plaintiffs next contend that section 2–1117 conflicts with “the purposes of joint and several liability.” Plaintiffs’ argument is based on 
Coney v. J.L.G. Industries, Inc.
, 97 Ill. 2d 104 (1983), and 
dicta
 from 
Best
. Plaintiffs argue that in 
Coney
 and 
Best
 this court recognized certain policies supporting the retention of joint and several liability. Neither of these decisions, however, intimate that the legislature cannot make a policy decision in favor of modifying joint and several liability. In 
Coney
, the issue was whether our adoption of comparative negligence in 
Alvis v. Ribar
, 85 Ill. 2d 1 (1981), required us to abandon joint and several liability. We noted that the vast majority of jurisdictions that had adopted comparative negligence have retained joint and several liability. 
Coney
, 97 Ill. 2d at 120-21. We recognized certain policy justifications for retaining joint and several liability and concluded that our adoption of comparative negligence did not require us to abandon joint and several liability. 
Coney
, 97 Ill. 2d at 121-24. In 
Best
, we discussed the purpose of joint and several liability and quoted extensively from 
Coney
. 
Best
, 179 Ill. 2d at 426-29. This discussion arose in the context of considering whether the defendants’ justifications for the legislature’s complete abolition of joint and several liability in favor of proportional several liability were at odds with our understanding of joint and several liability. However, we never resolved this question because we decided that amended section 2–1117 was passed in violation of the Illinois Constitution’s special legislation clause. 
Best
, 179 Ill. 2d at 429.

Plaintiffs’ argument on this point is not entirely clear. The legislature’s intent in passing the statute was to modify the common law rule of joint and several liability. The legislature maintained joint and several liability, but modified it with respect to payment of nonmedical damages by those less than 25% at fault. The plaintiffs’ argument begs the question of whether the legislature 
can
 modify joint and several liability. Plaintiffs have cited no authority for the proposition that such a change is not the legislature’s prerogative. In both of the above decisions, we recognized certain policies in favor of joint and several liability. We did not hold that no policies supported modifying the rule or that the legislature is powerless to act in this area. Accordingly, we reject plaintiffs’ argument that section 2–1117 is invalid on this basis.

V. Arbitrary Elimination of a Common Law Remedy

Plaintiffs next argue that section 2–1117 is unconstitutional as an arbitrary abolition of an established common law remedy. Plaintiffs rely on article I, section 12, of the Illinois Constitution, which provides that “[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly.” Ill. Const. 1970, art. I, §12. However, we have held repeatedly that this constitutional provision is merely an expression of philosophy and not a mandate that a certain remedy be provided in any specific form. 
Segers v. Industrial Comm’n
, 191 Ill. 2d 421, 435 (2000); 
DeLuna v. St. Elizabeth’s Hospital
, 147 Ill. 2d 57, 72 (1992); 
Sullivan v. Midlothian Park District
, 51 Ill. 2d 274, 277 (1972).

Further, any suggestion that Marlin has not found a certain remedy in the law for all injuries and wrongs which he received to his person is not well-taken. A jury found Nogle 99% responsible for Marlin’s work-related accident. Plaintiffs acknowledges that Marlin applied for and received worker’s compensation benefits. In 
Kotecki
, we noted that the central concept behind worker’s compensation is that “ ‘the employer and employee receive the benefits of a guaranteed, fixed-schedule, nonfault recovery system, which then constitutes the exclusive liability of the employer to his employee.’ ” 
Kotecki
, 146 Ill. 2d at 162-63, quoting 
Lambertson v. Cincinnati Corp.
, 312 Minn. 114, 119-20, 257 N.W.2d 679, 684 (1977). Here, 
Marlin
 received the benefit of the no-fault workers’ compensation system when he applied for and received his benefits. Additionally, a jury assessed his tort damages and found that Kraft was 1% responsible. Kraft was jointly and severally liable for Marlin’s medical damages and severally liable for 1% of his nonmedical damages. Thus, Marlin’s “certain remedy” in this case is that his employer paid his workers’ compensation benefits, all of his past and future medical expenses will be paid, and Kraft will pay its proportionate share of the nonmedical damages. Plaintiffs’ argument suggests that anything less than full payment of workers’ compensation benefits and full payment of a tort judgment by a 1% responsible defendant is not a “certain remedy” for all injuries and wrongs suffered by Marlin. We cannot agree. The legislature did not arbitrarily abolish a remedy in section 2–1117, as plaintiffs suggest. Rather, the legislature merely determined how judgments would be paid and determined that minimally responsible defendants should not be required to pay entire judgments.

VI. Special Legislation and Equal Protection

Plaintiffs next contend that section 2–1117 violates both the special legislation (Ill. Const. 1970, art. IV, §13) and equal protection (Ill. Const. 1970, art. I, §2) clauses of the Illinois Constitution. Plaintiffs claim that the legislature created an invalid classification when it enacted sections 2–1117 and 2–1118 of the Code of Civil Procedure.

As we noted, section 2–1117 preserves the common law rule of joint and several liability for medical damages and for all other damages for those found to be 25% or more at fault for a plaintiff’s injuries. The statute replaced joint and several liability with several liability with respect to nonmedical damages for those found less than 25% responsible for a plaintiff’s injuries. Section 2–1118 exempts two classes of defendants from section 2–1117. Defendants in medical malpractice cases and defendants in actions in which the injury was caused by the “discharge into the environment of any pollutant, including any waste, hazardous substance, irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, asbestos, toxic or corrosive chemicals, radioactive waste or mine tailings, and including any such material intended to be recycled, reconditioned or reclaimed.” (Hereinafter referred to as toxic tort cases.) 735 ILCS 5/2–1118 (West 1994).
(footnote: 2)
 Plaintiffs contend that the legislature created an arbitrary and invalid classification when it retained full joint and several liability for bodily injury or property damage only in toxic tort and medical malpractice cases. Plaintiffs argue that they are directly harmed by the classification because if Marlin’s injury would have been caused by a 1% responsible toxic tort or medical malpractice defendant, plaintiffs could have recovered all of their damages from that defendant. Because Kraft does not fall into one of those classifications, plaintiffs can recover only 1% of their nonmedical damages from Kraft.

All statutes enjoy a strong presumption of constitutionality, and the party challenging the statute bears the burden of clearly rebutting this presumption. 
Miller v. Rosenberg
, 196 Ill. 2d 50, 57-58 (2001). The constitutionality of a statute is a purely legal question; thus, our review is 
de novo
. 
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 31 (2001).

The special legislation clause prohibits the legislature from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. 
Best
, 179 Ill. 2d at 391. However, the legislature has broad discretion in making statutory classifications, and the clause prohibits only those which are arbitrary. 
In re Estate of Jolliff
, 199 Ill. 2d 510, 519 (2002). In other words, the clause prevents legislative classifications that discriminate in favor of a select group without a sound and reasonable basis. 
Jolliff
, 199 Ill. 2d at 519. The special legislation clause supplements the equal protection clause, which prohibits arbitrary discrimination against a person or class. 
Bilyk v. Chicago Transit Authority
, 125 Ill. 2d 230, 236 (1988). When a legislative classification neither affects fundamental rights nor makes a suspect classification, the statute is reviewed under the rational basis test. 
Jolliff
, 199 Ill. 2d at 520. Under this test, the statute is constitutional if the classification is rationally related to a legitimate governmental interest. 
Bilyk
, 125 Ill. 2d at 236. If the court can reasonably conceive of circumstances that justify distinguishing the class that the statute benefits from the class outside its scope, the classification is constitutional.
 In re Petition of the Village of Vernon Hills
, 168 Ill. 2d 117, 122 (1995).

Here, plaintiffs concede that the appropriate test is the rational basis test. Plaintiffs argue that there is no conceivable rational basis for treating plaintiffs in toxic tort and medical malpractice cases differently than other plaintiffs.

The reason for the classification is not apparent from the face of the statute. Consequently, we have undertaken a comprehensive review of the legislative history of Public Act 84–1431 (Pub. Act 84–1431, eff. November 25, 1986), which added sections 2–1117 and 2–1118 to the Code of Civil Procedure. These sections were enacted as part of a larger bill that addressed a perceived insurance crisis in the state. Public Act 84–1431 was entitled, “An act in relation to the insurance crisis.” Speaking in support of the legislation, Representative Greiman explained that:

“Early in this year and in the late days of last year, it became apparent to people all across this country that there was a problem in the accessibility of insurance in some lines and the affordability of commercial lines everywhere. *** And so, we came to this Legislature to see if we could develop a balanced piece of legislation that would make insurance affordable for Illinois businesses, for Illinois people, and accessible to us, so that some of the excesses of the civil justice system might be addressed, so that customers of insurance companies might have a fair and reasonable time after they have been cancelled or nonrenewed, to go into the marketplace and secure substituted insurance.” 84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 5-6 (statements of Representative Greiman).

Public Act 84–1431 made extensive amendments to the Illinois Insurance Code. Additionally, the legislation amended the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1–101 
et seq.
 (West 2000)) to expand the scope of immunities provided to local public entities. See 
Sylvester v. Chicago Park District
, 179 Ill. 2d 500, 509 (1997) (explaining that Public Act 84–1431 expanded immunities afforded to local public entities in an effort to reduce the cost of their liability insurance). Public Act 84–1431 also made several amendments to the Code of Civil Procedure, including adding sections 2–1117 and 2–1118. Section 2–1117 modified joint and several liability for those found less than 25% responsible. Representative Greiman explained the exceptions to the rule as follows:

“We made three exceptions to that [25%] rule. We said there should be no medically indigent in this state, and that if you are ... and for medical bills, medical expenses, defendants are jointly and severally liable. We said that for environmental cases, because so often there are hundreds of defendants that may, in fact, cause an environmental danger, joint and several remains. And finally, we said because the Medical Malpractice Act was just passed last year, we should see how that works, and we should not touch that. And so, we excluded the healing arts from that.” 84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 9 (statements of Representative Greiman).

The above explanation is the only reference in the legislative debates to the exemption for toxic tort cases. Nevertheless, we find that statement sufficient to discern a rational basis for the exception. The legislature apparently believed that the numbers of defendants involved in toxic tort cases would make the abolition of joint and several liability unduly burdensome on such plaintiffs. Representative Greiman explained that hundreds of defendants can contribute to an environmental injury. Apparently, the legislature was concerned that with this many potentially responsible defendants, the modification of joint and several liability would mean that a plaintiff would have to file suit against scores of defendants in order to have a chance at a complete recovery. This explanation is a rational reason for treating toxic tort cases differently, and plaintiffs have not argued that such a distinction is invalid. Accordingly, we believe that the legislature had a rational basis for exempting toxic tort cases from section 2–1117.

Plaintiffs rely on 
Best
 in arguing that the exception for medical malpractice cases is without a rational basis. In 
Best
, we considered a similar argument as it related to amended section 2–1117. See 
Best
, 179 Ill. 2d at 429-33. The amended version of 2–1117 provided for complete proportional several liability. However, subsection (b) of that section provided that:

“Notwithstanding the provisions of subsection (a), in any healing art malpractice action based on negligence or wrongful death, any defendants found liable shall be jointly and severally liable if the limitations on non-economic damages in Section 2–1115.1 of this Act are for any reason deemed or found to be invalid.” 735 ILCS 5/2–1117(b) (West 1996).

Earlier in the
 Best
 opinion, we had held that section 2–1115.1 (735 ILCS 5/2–1115.1 (West 1996)) was invalid. Thus, section 2–1117(b) was activated. We held that section 2–1117(b) violated the special legislation clause because it arbitrarily benefitted only medical malpractice plaintiffs. The defendants in that case had failed to demonstrate a “discernable rational basis for treating medical malpractice plaintiffs differently from other plaintiffs in death, bodily injury and property damage cases.” 
Best
, 179 Ill. 2d at 432. We further concluded that section 2–1117(b) was directly contrary to the stated purpose of Public Act 89–7, which stated in its preamble that “ ‘it is the public policy of this State that a defendant should not be liable for damages in excess of its proportional share of fault.’ ” 
Best
, 179 Ill. 2d at 432, quoting Pub. Act 89–7, Preamble, eff. March 9, 1995.

We disagree with plaintiffs’ contention that 
Best
 is controlling. Unlike with the amended version of section 2–1117, we find that the legislature had a rational basis for excluding medical malpractice cases from the 25% rule in the original version of section 2–1117. As set forth above, Representative Greiman explained that joint and several liability was preserved in medical malpractice cases because the legislature had recently passed medical malpractice legislation and wanted to see how the legislation worked before making other changes. Representative Greiman further explained this point in response to a question from Representative Davis about the medical malpractice exemption:

“What we have said is, that last year we dealt with healing arts and with the Liability of healing arts. The Supreme Court of Illinois has suggested that that is a separate classification. We thought it would be inappropriate to interfere in what we did last year and to see how it’s working. We cannot ... part of it is predictability, Mr. Davis, and if we change the law on them every year, then we would destroy the essence of predictability.” 84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 38-39 (statements of Representative Greiman).

The legislation to which Representative Greiman referred was Public Act 84–7 (Pub. Act 84–7, eff. August 15, 1985)), which made several amendments to the Code of Civil Procedure, all of which were aimed at medical malpractice litigation. The purpose of Public Act 84–7 was to respond to what was perceived to be a crisis in the area of medical malpractice. 
Miller
, 196 Ill. 2d at 63; 
Bernier v. Burris
, 113 Ill. 2d 219, 229 (1986). The legislature’s intent was to “reduce the burdens existing in the health professions as a result of the perceived malpractice crisis.” 
Bernier
, 113 Ill. 2d at 252. Some of the changes the legislation made in the area of healing art malpractice cases were (1) the establishment of review panels, which would make determinations as to liability and damages before a healing art malpractice plaintiff could go to trial (Ill. Rev. Stat. 1985, ch. 110, pars. 2–1012 through 1020)
(footnote: 3); (2) allowing periodic payment of certain damages (Ill. Rev. Stat. 1985, ch. 110, pars. 2–1701 through 2–1719); (3) modification of the collateral source rule to allow negligence judgments against physicians or hospitals to be reduced by up to one-half for benefits received from collateral sources (Ill. Rev. Stat. 1985, ch. 110, par. 2–1205); (4) prohibiting punitive damage awards in healing art malpractice cases (Ill. Rev. Stat. 1985, ch. 110, par. 2–1115); (5) establishment of a sliding scale of the allowable fees that an attorney may charge in representing a plaintiff in a medical malpractice action (Ill. Rev. Stat. 1985, ch. 110, par. 2–1114); (6) abolishing the special injury requirement in malicious prosecution suits arising out of healing art malpractice suits (Ill. Rev. Stat. 1985, ch. 110, par. 2–114); and (7) requiring a plaintiff, prior to filing a medical malpractice action, to obtain a certificate from a qualified health professional certifying that there is a reasonable and meritorious cause for filing the action (Ill. Rev. Stat. 1985, ch. 110, par. 2–622).

Given all of the changes that the legislature made in the area of medical malpractice litigation the previous year, we believe that the legislature’s decision to exempt medical malpractice defendants from section 2–1117 was rational. The legislature was not acting arbitrarily. Rather, the legislature’s decision to see how Public Act 84–7 was working in practice before making any additional changes to this area of the law was reasonable. Also, it is noteworthy that the changes made in Public Act 84–7 were beneficial to medical malpractice defendants and detrimental to medical malpractice plaintiffs. Thus, when the legislature conferred a benefit on other defendants in section 2–1117, it was rational for  it to exempt medical malpractice defendants, the one class of defendants for whom the legislature had implemented numerous favorable changes in the law the year before.

In 
Bernier
 and 
Miller
, this court upheld several sections of Public Act 84–7 against special legislation challenges. In 
Bernier
, we rejected special legislation challenges to the provisions of Public Act 84–7 that (1) permitted periodic payment of damage settlements (
Bernier
, 113 Ill. 2d at 238-39); (2) modified the collateral source rule (
Bernier
, 113 Ill. 2d at 242-43); (3) abolished punitive damages (
Bernier
, 113 Ill. 2d at 245-47); and (4) provided for a sliding scale for contingent fee awards (
Bernier
, 113 Ill. 2d at 252-53). In 
Miller
, we upheld the sections of Public Act 84–7 that (1) eliminated the special injury requirement in malicious prosecution suits by medical malpractice defendants (
Miller
, 196 Ill. 2d at 60-68); and (2) required a potential plaintiff to get an affidavit from a qualified health professional certifying the merits of the cause of action (
Miller
, 196 Ill. 2d at 64-65). We noted that the legislature was responding to a perceived crisis in the area of medical malpractice litigation and had chosen rational means to address the problem. 
Miller
, 196 Ill. 2d at 62-68; 
Bernier
, 113 Ill. 2d at 234-53. If the legislature had a rational basis for placing these additional burdens on medical malpractice plaintiffs, we believe that it likewise had a rational basis for exempting these plaintiffs from the additional burdens placed on other plaintiffs in section 2–1117. Plaintiffs’ suggestion that the legislature arbitrarily conferred a benefit on medical malpractice plaintiffs by exempting them from section 2–1117 is not well-taken. Rather, the legislature acted rationally in not further burdening medical malpractice plaintiffs after passing extensive legislation the previous year that burdened medical malpractice plaintiffs but no others.

Further, unlike in 
Best
, we do not believe that the medical malpractice exemption was diametrically opposed to the purposes of the public act that implemented it. As stated, the purpose of Public Act 84–1431 was to relieve a perceived insurance crisis in the state and to attempt to reduce insurance premiums. Section 2–1117’s modification of the joint and several liability rule was part of the attempt to resolve this problem. However, having recently taken steps to reduce medical malpractice premiums, it was not arbitrary for the legislature to conclude that no further action in that area was required. As Representative Greiman explained, the legislature wished to see how the previous legislation was working before making additional changes. This was not arbitrary and was, indeed, entirely reasonable.

Plaintiffs also suggest that section 2–1117 creates invalid classifications because it applies only to “actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability.” Plaintiffs contend that there is no rational basis for modifying the common law rule of joint and several liability only as to these actions, and that defendants in other types of tort cases are still jointly and severally liable. However, as noted above, the legislature’s intent in passing Public Act 84–1431 was to resolve a perceived insurance crisis in the state, and the legislature was trying to find ways to reduce insurance premiums. Generally, liability insurance is purchased to provide coverage for claims of bodily injury or property damage caused by the insured. Thus, plaintiffs have not shown that the legislature acted arbitrarily in limiting section 2–1117 to cases of bodily injury, death, or property damage arising from negligence or product liability based on strict tort liability.

VII. Separation of Powers

Plaintiffs next contend, in a two-sentence argument, that section 2–1117 is unconstitutional under the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, §1) because it amounts to a mandatory arbitrary legislative remittitur, thus invading on the province of the judiciary to exercise its discretionary powers of remittitur on a case-by-case basis. Plaintiffs rely on 
Best
, 179 Ill. 2d at 410-15, in which we held that section 2–1115.1 of the Code of Civil Procedure was an unconstitutional legislative remittitur. That section placed a $500,000 cap on noneconomic damages in actions seeking damages for death, bodily injury, or property damage based on negligence, or product liability based on any theory. We held that the cap invaded the judiciary’s prerogative of “determining whether a jury’s assessment of damages is excessive within the meaning of the law.” 
Best
, 179 Ill. 2d at 414.

Plaintiffs’ argument is without merit. Section 2–1117 is simply not a legislative remittitur. Unlike section 2–1115.1, which set an arbitrary cap on noneconomic damages, section 2–1117 merely determines when a defendant can be held liable for the full amount of a jury’s verdict and when a defendant is liable only in an amount equal to his or her percentage of fault. Section 2–1117 does not reduce the amount of the jury’s verdict.

VIII. Vagueness

Plaintiffs next contend that section 2–1117 violates the due process guarantee of article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2) because it is so vague, indefinite, and uncertain, that persons of ordinary intelligence must guess at its meaning. A legislative act that is so vague, indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine with any reasonable degree of certainty what the legislature intended will be declared to be void. 
R.W. Dunteman Co. v. C/G Enterprises, Inc.
, 181 Ill. 2d 153, 163 (1998). When faced with a vagueness challenge to a statute, a court considers not only the language used, but also the legislative objective and the evil the statute is designed to remedy. 
R.W. Dunteman Co.
, 181 Ill. 2d at 163.

Plaintiffs base their vagueness challenge on two main points. First, that courts have reached different conclusions as to how section 2–1117 should be applied, and second, that its meaning cannot be discerned when it is considered in conjunction with the Contribution Act. We disagree on both points.

When construing section 2–1117, it is not difficult to determine “with any reasonable degree of certainty what the legislature intended.” 
R.W. Dunteman Co.
, 181 Ill. 2d at 163. The legislature intended to provide that minimally culpable defendants should not be responsible for entire judgments and set forth clear rules for how that policy would be implemented. That various courts have interpreted section 2–1117 differently does not mean that the statute is unconstitutionally vague. If that were the test, few statutes would remain on the books. Further, a statute is not unconstitutionally vague merely because one can imagine hypothetical situations in which the meaning of some terms might be called into question. 
East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel
, 178 Ill. 2d 399, 425 (1997). Finally, we reject plaintiffs’ suggestion that section 2–1117 is vague because it conflicts with the Contribution Act. We have already determined above that there is no conflict. However, we note again that plaintiffs are misreading section 4 of the Contribution Act. Plaintiffs claim incorrectly that section 4 contains a “guarantee of joint and several liability.” As we set forth above, that section is merely a clarification that nothing in the 
Contribution Act
 is intended to affect a plaintiff’s right to recover all of his or her damages from any responsible defendant. This is neither a “guarantee” of joint and several liability nor a statement that nothing in the Illinois Compiled Statutes modifies joint and several liability. We reject plaintiffs’ vagueness challenge.

IX. Jury Instruction

The final point raised by plaintiffs is that the trial court erred in refusing to give Illinois Pattern Jury Instructions, Civil, No. 180.19 (1995) and in refusing to answer the jurors’ questions. Plaintiffs support these points with a six-sentence argument that merely summarizes the contentions and then ends by saying,“As the dissent below indicates, that failure constituted reversible error.” Plaintiffs did not attempt to develop an argument in support of these points with citations to the record and supporting legal authority. Their reliance on the reasoning of the appellate court dissent is no help, as the dissent’s only comment on this issue was, “I do, however, believe the trial court erred in failing to instruct the jury after the jury submitted questions. All questions should have been answered. The trial court should also have given IPI Civil  (1995) No. 180.19.” 325 Ill. App. 3d at 598 (Myerscough, J., dissenting). Plaintiffs’ argument thus violates Rule 341(e)(7) (188 Ill. 2d R.  341(e)(7)), which requires that the argument contain “the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on.” Accordingly, we deem the argument waived.

CONCLUSION

In sum, we hold that the appellate court properly determined that Marlin’s employer could be considered in the division of fault under section 2–1117. 
Lilly v. Marcal Rope & Rigging, Inc.
, 289 Ill. App. 3d 1105 (1997), which held to the contrary, is overruled. Additionally, plaintiffs have failed to demonstrate that section 2–1117 in unconstitutional. We thus affirm the judgment of the appellate court.

Affirmed
.

JUSTICES GARMAN and RARICK took no part in the consideration or decision of this case.

CHIEF JUSTICE McMORROW, specially concurring:

I agree with the court that, under the reasoning set forth in 
Doyle v. Rhodes
, 101 Ill. 2d 1, 10-11 (1984), 
Braye v. Archer-Daniels-Midland Co.
, 175 Ill. 2d 201, 207-08 (1997), and 
Geise v. Phoenix Co. of Chicago, Inc.
, 159 Ill. 2d 507, 514 (1994), a plaintiff’s employer who is a third-party defendant is a party who “could have been sued by the plaintiff” under section 2–1117 of the Code of Civil Procedure (735 ILCS 5/2–1117 (West 1994)). Accordingly, I also agree with the court’s conclusion that the employer’s fault must be included in the apportionment of fault conducted pursuant to that provision.
(footnote: 4) I write separately to address plaintiffs’ contention that section 2–1117 is unconstitutional.

“The common law doctrine of joint and several liability provides, in general, that when two or more defendants tortiously contribute to the same, indivisible injury, each defendant may be held jointly and severally liable for the entire injury.” 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 423 (1997). Section 2–1117 modifies the doctrine of joint and several liability by providing, in general, that independent concurring tortfeasors will be only proportionately liable for nonmedical damages when those tortfeasors’ percentage of comparative responsibility is less than 25%. Section 2–1117 states, in pertinent part:

“[I]n actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff’s past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff and any third party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages.” 735 ILCS 5/2–1117 (West 1994).

See also Restatement (Third) of Torts: Apportionment of Liability §§17, D18 (2000) (listing jurisdictions which have adopted similar “threshold” statutes).

Section 2–1117 does not impinge upon a fundamental right or involve a suspect classification. Accordingly, to satisfy the constitutional requirements of due process and equal protection (Ill. Const. 1970, art. I, §2), the statute need only satisfy the rational basis test. Under the rational basis test, we must determine “whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal.” 
Jacobson v. Department of Public Aid
, 171 Ill. 2d 314, 323 (1996).

A principal reason for modifying joint and several liability that was discussed during the legislative debates on the bill which resulted in section 2–1117 was that the doctrine of joint and several liability unfairly requires civil defendants to pay for more damages than they cause or for which they are responsible. Representative Greiman, for example, described the functioning of joint and several liability in terms which were repeated throughout the debates:

“[J]oint and several liability *** means that if you are one percent negligent, you must pay the entire judgment ***. *** We have changed that. We have heard from *** people all across the state that we are concerned that we are minimally liable, five, 10 percent liable, 15 percent liable, and we’re stuck for the whole thing. So we have said that there should be a threshold. If you are 25 percent liable, you are so much involved with causing that accident *** that you should respond in damages for the entire amount. But if you are less than 25 percent, then you should pay only your share. *** 
The minimally liable are no longer liable for any more than their share
. Those people only who have a significant part of the liability will remain [jointly and severally] liable.” (Emphasis added.) 84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 8-9 (statements of Representative Greiman).

See also, 
e.g.
, 84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 65-68 (statements of Representative Regan); see generally R. Wright, 
Understanding Joint and Several Liability
, 1 Shepard’s Ill. Tort Rep. 278 (1991) (discussing legislative history of section 2–1117).

Mirroring the comments made during the legislative debates, defendant Kraft maintains before this court that, under joint and several liability, a civil defendant who is only “minimally negligent” or “minimally culpable” with respect to a plaintiff’s injury is required to pay for the entirety of the plaintiff’s damages. Defendant maintains that this is inherently unfair and that the modification of joint and several liability undertaken in section 2–1117 is a reasonable means of achieving the goal of eliminating this unfairness.

On several occasions, this court has explained that the doctrine of joint and several liability does not, by itself, require a civil defendant to pay for more damages than they cause or for which they are responsible. For example, in 
Coney v. J.L.G. Industries, Inc.
, 97 Ill. 2d 104 (1983), this court discussed joint and several liability as it related to the doctrine of comparative negligence or fault. 
Coney
, 97 Ill. 2d at 110. The defendant in
 Coney
 maintained that, having adopted comparative negligence, this court should abandon the doctrine of joint and several liability. According to the defendant, “[w]ith the adoption of comparative negligence where damages are apportioned according to each party’s fault, *** it is no longer rational to hold a defendant liable beyond his share of the total damages.” 
Coney
, 97 Ill. 2d at 120. We rejected this argument and held that the adoption of comparative negligence did not require the abolition of joint and several liability. In so holding, we stated:

“The feasibility of apportioning fault on a comparative basis does not render an indivisible injury ‘divisible’ for purposes of the joint and several liability rule.
 A concurrent tortfeasor is liable for the whole of an indivisible injury when his negligence is a proximate cause of that damage.
 *** The mere fact that it may be possible to assign some percentage figure to the relative culpability of one negligent defendant as compared to another
 does not in any way suggest that each defendant’s negligence is not a proximate cause of the entire indivisible injury.
” (Emphases added.)
 Coney
, 97 Ill. 2d at 121-22.

Subsequently, in 
Best v. Taylor Machine Works
, 179 Ill. 2d 367 (1997), we explained at length that tortfeasors who are held jointly and severally liable are each fully responsible for the entirety of the plaintiff’s injury:

“ ‘Joint and several liability only applies to injuries for which the defendant herself is fully responsible. She is responsible for the entirety of some injury
 only if her tortious behavior was an actual and proximate cause of the entire injury.
 *** She is not liable for injuries, including separable portions of injuries, to which she did not contribute. She is not liable unless the tortious aspect of her conduct was an actual cause of the injury. Moreover, even then, she is not liable if, for reasons of policy or principle, her connection to the injury is considered too remote or minimal to be “proximate.”

A defendant’s individual full responsibility for an injury that was an actual and proximate result of her tortious behavior is not diminished if some other person’s tortious behavior also was an actual and proximate cause of the injury. Rather each defendant whose tortious behavior was an actual and proximate cause of the injury is individually fully responsible for the entire injury. This is most obvious when a defendant’s tortious behavior was either necessary or independently sufficient for the occurrence of the injury, but it remains true whenever a defendant’s tortious behavior was an actual and proximate cause of the injury.

* * *

[There is a fundamental difference] between each [joint] defendant’s 
individual full responsibility
 for the damages that she tortiously caused and the 
comparative responsibility percentages
 that are obtained by comparing the defendants’ individual full responsibilities for the injury. [In situations where two defendants are held jointly and severally liable for negligently injuring a plaintiff] [n]either defendant *** [is] merely “50% negligent” or “50% responsible.” Such statements make as much sense as saying that someone is “50% pregnant.” Nor did either defendant’s negligence cause or occasion only 50% of the plaintiff’s injury. Rather, each defendant was 100% negligent, each defendant’s negligence was an actual and proximate cause of 100% of the injury, and each defendant therefore is fully responsible for the entire injury. Only when we
 compare
 their individual full responsibilities, and assume that they were equally negligent, does it make sense to say that each defendant,
 when compared to the other
, bears 50% of the total
 comparative
 responsibility for the injury.’ ” (Emphases in original.) 
Best
, 179 Ill. 2d at 428-29, quoting R. Wright,
 The Logic and Fairness of Joint and Several Liability
, 23 Memphis St. U. L. Rev. 45, 54-56 (1992).

One year after 
Best
, in 
Woods v. Cole
, 181 Ill. 2d 512 (1998), this court again observed that the doctrine of joint and several liability does not require civil defendants to pay for more damages than they cause or for which they are responsible:

“In general, the common law doctrine of joint and several liability provides that when two or more individuals tortiously contribute to the same, indivisible injury, each individual may be held jointly and severally liable for the entire injury. See generally 3 F. Harper, F. James & O. Gray, Torts §§10.1, 10.2 (2d ed. 1986); W. Keeton, Prosser & Keeton on Torts §§47, 50 through 52 (5th ed. 1984);
 Coney v. J.L.G. Industries, Inc.
, 97 Ill. 2d 104, 119-20 (1983). Under the common law, there are several distinct circumstances in which a contributing tortfeasor may be held jointly and severally liable. See 3 F. Harper, F. James & O. Gray, Torts §10.1 (2d ed. 1986) (identifying four categories in which the courts have historically imposed joint and several liability). In perhaps the most frequently occurring situation, a tortfeasor who acts independently and concurrently with other individuals to produce an indivisible injury to a plaintiff may be held jointly and severally liable for that injury, even though the tortfeasor does not act in concert with the other individuals, and shares no common purpose or duty with them.
 Burke v. 12 Rothschild’s Liquor Mart, Inc.
, 148 Ill. 2d 429, 438 (1992). Such an “independent concurring tortfeasor” (3 F. Harper, F. James & O. Gray, Torts §10.1, at 7 (2d ed. 1986)) is not held liable for the entirety of a plaintiff’s injury because he or she is responsible for the actions of the other individuals who contribute to the plaintiff’s injury. Rather, an independent, concurring tortfeasor is held jointly and severally liable because the plaintiff’s injury cannot be divided into separate portions, and because the tortfeasor fulfills the standard elements of tort liability,
 i.e.
, his or her tortious conduct was an actual and proximate cause of the plaintiff’s injury. See generally 3 F. Harper, F. James & O. Gray, Torts §10.1, at 17-28 (2d ed. 1986); R. Wright,
 Allocating Liability Among Multiple Responsible Causes: A Principled Defense of Joint and Several Liability for Actual Harm and Risk Exposure
, 21 U.C. Davis L. Rev. 1141, 1141-68 (1988); R. Michael,
 Joint Liability: Should It Be Reformed or Abolished?–The Illinois Experience
, 27 Loy. U. Chi. L.J. 867, 906-08 (1996). The fact that another individual also tortiously contributes to the plaintiff’s injury does not alter the independent, concurring tortfeasor’s responsibility for the entirety of the injury which he or she actually and proximately caused. See Restatement (Second) of Torts §875, Comment
 c
, at 315 (1979);
 Coney
, 97 Ill. 2d at 121-22.” 
Woods
, 181 Ill. 2d at 518-19.

If the only possible justification for the “threshold” modification of joint and several liability set forth in section 2–1117 was that the modification is necessary in order to eliminate unfairness created by the doctrine of joint and several liability itself, then section 2–1117 could not be constitutionally sustained. Ensuring that civil defendants do not pay for more damages than they cause or for which they are responsible is a legitimate legislative goal. However, the legislature’s modification of joint and several liability in section 2–1117 is not rationally related to that goal because–as this court has explained repeatedly–joint and several liability does not force civil defendants to pay for damages which they do not cause or for which they are not responsible in the first place. See 
Coney
, 97 Ill. 2d at 121-22; 
Best
, 179 Ill. 2d at 426-29; 
Woods
, 181 Ill. 2d at 518-19; see also A. Twerski, 
The Joint Tortfeasor Legislative Revolt: A Rational Response to the Critics
, 22 U.C. Davis L. Rev. 1125, 1145 (1989) (the point that joint and several liability does not, by itself, result in civil defendants’ paying for damages they did not cause or for which they are not responsible “cannot be assailed”).

Although section 2–1117 cannot be sustained on the basis that joint and several liability is an inherently unfair doctrine, this conclusion does not end the constitutional inquiry. A statute may be upheld under rational basis review “if any set of facts can reasonably be conceived to justify” (
Jacobson v. Department of Public Aid
, 171 Ill. 2d 314, 324 (1996)) the statute. Accordingly, the rationality of other possible justifications for the modification of joint and several liability set forth in section 2–1117 must be addressed.

One justification that has been frequently advanced for “threshold” statutes, such as section 2–1117, is that these statutes help eliminate elements of unfairness found in the civil justice system that are caused by factors other than joint and several liability itself. See, 
e.g.
, Restatement (Third) of Torts: Apportionment of Liability §D18, Comment 
c
, at 221 (2000) (the threshold approach addresses unfairness caused by expansive liability rules); 22 U.C. Davis L. Rev. 1125. One problem in particular that is said to be alleviated by threshold statutes is that of “compromise verdicts.” The problem of compromise verdicts has been explained:

“[A] ten percent finding of fault in a multi-defendant case is not particularly difficult to obtain. Juries *** parcel out small portions of liability without significant evidence to support the verdict, and appellate courts are close to impotent if they wish to reverse. The evidence may be just enough to squeak by, and once the plaintiff passes the most minimal of thresholds, the defendant under common-law doctrine is liable for full damages.” 22 U.C. Davis L. Rev. at 1139.

Moreover, “[g]iven a constitutional right to jury trial and severe limitations on the judge’s right to direct a verdict when legitimate fact questions need to be decided, *** the mechanisms to thwart improper jury verdicts are simply not operative.” 22 U.C. Davis L. Rev. at 1139. See also Restatement (Third) of Torts: Apportionment of Liability § D18, Reporters’ Note, Comment 
c
, at 226-27 (2000) (listing four frequently cited cases where defendants assigned a very low percentage of comparative responsibility were held fully liable for plaintiff’s damages).

Exactly why compromise verdicts arise is an issue that is not fully discussed in the academic literature. It would appear that such verdicts are the result of juror confusion in cases where a third-party defendant is involved, the jury is instructed on the principles of contribution, and the jury is asked to make percentage allocations of fault. In these cases, the jury is typically not instructed on the effect of joint and several liability and may be unaware that a verdict rendered against the defendant means that the defendant is fully responsible for the plaintiff’s damages. In addition, the jury may confuse its findings on the issue of comparative fault for purposes of contribution with its finding of liability to the plaintiff. In other words, the jury may mistakenly believe that a finding that a defendant’s comparative responsibility is 10% 
for purposes of contribution
 is, in fact, a finding that the defendant is only 
liable to the plaintiff
 for 10% of the damages. If it is not so instructed, the jury may also be unaware that contribution may not be available to the defendant if the third-party defendant is insolvent or immune. In these situations, some or all of the members of the jury may compromise on the primary question of the defendant’s liability to the plaintiff, believing that the defendant may then recover fully in contribution or that the defendant will never be required to fully pay for the plaintiff’s damages in the first place.

Notably, in the case at bar, Kraft describes the jury verdict against it as a type of compromise verdict. According to Kraft, the great disparity in percentages of fault assigned to it and to plaintiff’s employer Nogle & Black–1% versus 99%–means that the jury “found the employer fully responsible for the injury” to plaintiffs. The jury in this case was not instructed on the common law doctrine of joint and several liability and was not instructed on the effect of section 2–1117. Nor was the jury instructed on the effect of 
Kotecki v. Cyclops Welding Corp
., 146 Ill. 2d 155 (1991), which holds that the amount in contribution that may be recovered from a third-party defendant who is a plaintiff’s employer is limited to the amount of any worker’s compensation damages. Thus, according to Kraft, the jury in this case was expressing its intent to find Nogle & Black fully responsible for plaintiffs’ injuries by finding Kraft 1% liable “and then pass[ing] the resulting amount on to Nogle & Black.” In other words, Kraft’s position in this appeal is that the jury compromised on the question of Kraft’s liability to plaintiffs because the jury believed either that Kraft would be able to recover 99% of plaintiffs’ damages in contribution from the employer or that Kraft would not be responsible for 99% of plaintiffs’ damages in the first place.
(footnote: 5)
 Whether compromise verdicts are a pervasive problem in the civil justice system has been seriously questioned. See, 
e.g.
, R. Wright, 
The Logic and Fairness of Joint and Several Liability
, 23 Memphis St. U. L. Rev. 45, 63 n.49 (1992); M. Hager, 
What’s (Not!) In a Restatement? ALI Issue-Dodging on Liability Apportionment
, 33 Conn. L. Rev. 77, 104-07 (2000). Furthermore, if compromise verdicts are, in fact, a problem, the more direct way to address that problem–rather than modifying joint and several liability–would be to improve jury instructions or to more vigilantly review jury verdicts. As one commentator has explained:

“Even if in a few cases juries have found deep-pocket defendants liable in the absence of sufficient evidence of tortious behavior or causation, the obvious and usual remedy is policing of the juries’ findings by trial and appellate judges, rather than the elimination of joint and several liability. In such cases, the real problem is not joint and several liability, but rather 
any
 liability. Why sacrifice injured plaintiffs in every case involving multiple tortfeasors (by eliminating or limiting joint and several liability) to correct problems that arise, at most, in a very small percentage of cases that can and should be handled by proper judicial supervision of juries?” 23 Memphis St. U. L. Rev. at 65.

However, under rational basis review, the absence of empirical evidence showing that compromise verdicts are, in fact, a serious problem in the civil justice system cannot serve as a basis for holding section 2–1117 constitutionally invalid. See 
Federal Communications Comm’n v. Beach Communications, Inc.
, 508 U.S. 307, 315, 124 L. Ed. 2d 211, 222, 113 S. Ct. 2096, 2102 (1993) (a legislative choice is generally “not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data”). Moreover, under rational basis review, the wisdom of the solution to the problem of compromise verdicts adopted in section 2–1117, 
i.e.
, imposing a threshold for joint and several liability, is a question that must be left for the legislature. See, 
e.g.
, 
Best
, 179 Ill. 2d at 377 (under rational basis review, the courts “should not and need not balance the advantages and disadvantages of reform”).

Clearly, statutes such as section 2–1117 that establish a threshold for joint and several liability are problematic in many respects:

“[A]ny threshold is an imperfect way to screen out tangential tortfeasors, and often the threshold is set too high (50 percent) to serve this function well. When there are many tortfeasors, this [type of statute] does not perform well, as it virtually guarantees that several liability will be imposed, regardless of the role of any given tortfeasor in the plaintiff’s injuries. This threshold series also imposes the risk of insolvency on an entirely innocent plaintiff whenever all solvent defendants are below the specified threshold. To the extent that the justification for modifying joint and several liability is the adoption of comparative responsibility, so that the plaintiff may also be legally culpable, imposing the risk of insolvency on an innocent plaintiff is unwarranted.” Restatement (Third) of Torts: Apportionment of Liability §17, Comment 
a
, at 148-49 (2000).

Cf
. Restatement (Third) of Torts: Apportionment of Liability §§C18 through C21 (2000); Unif. Comp. Fault Act §2, 12 U.L.A. 39 (West Supp. 1990).

Nevertheless, whatever the policy shortcomings of section 2–1117, the modification of joint and several liability undertaken in the statute is rationally related to addressing the problem of compromise verdicts. See Restatement (Third) of Torts: Apportionment of Liability § D18, Reporters’ Note, Comment 
c
, at 226 (2000) ( if low-fault-percentage jury verdicts “are perceived to be a problem, a threshold for joint and several liability would be the appropriate solution”); 22 U.C. Davis L. Rev. at 1139-40; A. Twerski, 
The Baby Swallowed the Bathwater: A Rejoinder to Professor Wright
, 22 U.C. Davis L. Rev. 1161, 1161-62 (1989). On this ground, under the deferential standard of rational basis review, the constitutionality of section 2–1117 may be sustained.

For the foregoing reasons, I concur in the judgment of the court.

JUSTICE KILBRIDE, dissenting:

The majority construes section 2–1117 to include plaintiff’s employer as a “ ‘third-party defendant who could have been sued by the plaintiff’ ” within the meaning of that statute. Slip op. at 8. As a result of this construction, a seriously injured plaintiff entirely innocent of any fault can only recover 1% of his damages from a defendant whose negligence was found by a jury to be a direct and proximate cause of his injuries. A fair reading of the statute does not require such a result. Accordingly, I respectfully dissent.

The majority’s analysis begins with a recital of several well-known rules of statutory construction (slip op. at 5), but omits an equally important rule: “Statutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation” (
In re Illinois Bell Switching Station Litigation
, 161 Ill. 2d 233, 240 (1994)).

This court has recognized that section 2–1117 is in derogation of the common law. 
Woods v. Cole
, 181 Ill. 2d 512, 521 (1998). In that case, despite the fact that the statute contains no exception for tortfeasors who act in concert, the court held that there was no indication, in either the operation or the language of section 2–1117, that the legislature intended to abolish the well-established common law principle that “ ‘[p]arties who act in concert, and co-operate in doing a negligent act which causes an injury, are liable, either jointly or severally, to the person injured, for the damage thereby occasioned.’ ” 
Woods, 
181 Ill. 2d at 521, quoting 
Andrews v. Boedecker
, 126 Ill. 605, 610 (1888).

The majority discerns that the legislature, in enacting section 2–1117, clearly intended that minimally responsible defendants should not have to pay entire damage awards. Slip op. at 9. No explanation is offered for this conclusion, save the majority’s opinion that “the broad wording in the statute merely shows that the legislature intended the division of responsibility to include those people in the suit who might have been responsible for the plaintiff’s injuries.” Slip op. at 9. The majority argues that “ignoring the party found to be 99% responsible for the plaintiff’s injuries and requiring the party found 1% responsible to pay all of the nonmedical damages would not be in accord with the clear legislative intent that minimally responsible defendants should not be liable for entire judgments.” Slip op. at 9.

The 
Lilly 
court’s cogent analysis should have laid those fears to rest. That court said:

“Just as the Contribution Act does not come into play until the plaintiff has collected more than a 
pro rata 
share from a defendant, so, too, the joint liability law does not come into play 
until a plaintiff has obtained a judgment against a defendant
. Therefore, in order to determine whether ‘any third party defendant who could have been sued by the plaintiff’ should include the plaintiff’s employer, the relevant inquiry is not whether there is a theoretical or philosophical possibility of suing the employer at the outset, but whether the plaintiff could obtain a judgment against an employer. The judgment is the relevant time of inquiry under the joint liability law. Could a plaintiff obtain a judgment? If the employer did not raise the exclusivity provisions of section 5(a), presumably he could. If the plaintiff did obtain such a judgment, then it would be fair to allow that judgment, and the jury’s assessment of the employer’s culpability, to be included in the section 2–1117 equation of allocation. If, however, it was not the plaintiff but a third-party plaintiff who obtained the judgment, as will universally be the case in the real world, then the allocation provisions of section 2–1117 should not include the plaintiff’s employer.” (Emphasis in original.) 
Lilly, 
289 Ill. App. 3d at 1116.

Reasoning further, the 
Lilly 
court said:

“Turning to defendants who are immune from suit, such as the plaintiff’s employer, the State of Illinois, and others, what is the practical effect of eliminating them from the allocation equation? First, as we indicated earlier, if for some unfathomable reason an immune defendant does not raise its immunity and is subjected to a judgment, then the allocation provisions of section 2–1117 would properly include that defendant’s fault in the equation. This result would be fair to all parties because as the plaintiff is able to collect whatever portion of the judgment was attributable to the immune defendant, so also should that immune defendant’s conduct be considered under 2–1117’s allocation of fault. But if the immune defendant asserts its immunity, or if the plaintiff does not file against the immune defendant because he or she is obeying the dictates of the supreme court rule which prohibits such unmeritorious filings (155 Ill. 2d R. 137), then the immune defendant will never be subject to any collection procedure by the plaintiff and its conduct should not play any part in the allocation equation of section 2–1117.” 
Lilly
, 289 Ill. App. 3d at 1117.

Thus, it is apparent that a “minimally responsible” defendant would not have to pay an entire judgment in the case before us. Defendant can recoup 99% of the amount owing to plaintiff from the third-party defendant employer, subject only to the employer’s right to limit the amount of its contribution to its worker’s compensation payments as defined by our holding in 
Kotecki v. Cyclops Welding Corp.
, 146 Ill. 2d 155, 164-65 (1991).

By the time relative fault was determined by the jury in the case before us, plaintiff had long since elected his worker’s compensation remedy against his employer and had received benefits. In the real world, any claim of common law fault by plaintiff against his employer would certainly have been met with the defense of immunity and, most probably, an application for sanctions under Supreme Court Rule 137 (155 Ill. 2d R. 137).

The majority has offered no authority and no rationale for its assertion that the clear legislative intent mandates its holding. The 
Lilly 
court, as the majority acknowledges (slip op. at 7), has distinguished our holding in 
Doyle v. Rhodes
, 101 Ill. 2d 1 (1984). I believe that well-reasoned distinction (
Lilly
, 289 Ill. App. 3d at 1108-10) is correct. Without restating in full the rationale set forth in 
Lilly
, I contend that this court should have followed 
Lilly
’s interpretation of section 2–1117.

The majority’s construction of section 2–1117 impairs the plaintiff’s right to recover against a tortfeasor found to have proximately caused his injuries. Such a holding is contrary to the long-standing rule of construction regarding statutes in derogation of the common law recently restated in
 Bell Switching Station
, 161 Ill. 2d at 240. Therefore, I respectfully dissent.

FOOTNOTES
1:     
1
This section was amended in 1995 by Public Act 89–7 to provide for complete proportional several liability. However, this court declared Public Act 89–7 (Pub. Act 89–7, eff. March 9, 1995) unconstitutional in its entirety in 
Best
, 179 Ill. 2d 367. The effect of 
Best
 was to leave the law in force as it was before the adoption of the amendment. See 
People v. Gersch
, 135 Ill. 2d 384, 390 (1990).

2:     
2
This section was repealed as part of Public Act 89–7. As noted previously, our decision in 
Best
, which held that Public Act 89–7 was unconstitutional in its entirety, had the effect of reinstating this section. See 
Gersch
, 135 Ill. 2d at 390.

3:     
3
These sections were held unconstitutional in 
Bernier
, 113 Ill. 2d at 230-34.

4:     
4
This conclusion also finds support in the Restatement (Third) of Torts. See Restatement (Third) of Torts: Apportionment of Liability §D19(a), Comment 
f
, at 230 (2000).

5:     
5
Before this court, Kraft does not challenge the jury’s finding of negligence.